James I. Stang (CA State Bar #94435
Kenneth H. Brown (CA Bar #100396)
Ilan D. Scharf (NY State Bar #4042107)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Phone: (310) 277-6910
Fax: (310) 201-0760
Email: jstang@pszjlaw.com
        kbrown@pszjlaw.com
        ischarf@pszjlaw.com

Attorneys to Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Roman Catholic Bishop of Great Falls, Montana, a Montana Religious Corporation Sole (Diocese of Great Falls - Billings), | ) ) Bankruptcy Case No. 17-60271-JDP ) ) |
| Debtor-in-Possession | ) ) ) |

| | |
|---|---|
| Official Committee of Unsecured Creditors | Adv. Proc. No. _____ |
| Plaintiff, | |
| v. | |
| Roman Catholic Bishop of Great Falls, Montana, A Montana Religious Corporation Sole, Mary Queen of Peace, Billings, Montana; Our Lady of Lourdes Parish, Great Falls, Montana, Holy Family Parish Great Falls Montana, St Barnard (Billings); St Patrick Co-Cathedral (Billings); St Joseph (Plentywood); Holy Spirit (Great Falls); St Mary (Livingston); St Pius X (Billings); St John The Evangelist Church (Baker); St Bernard Church (Charlie Creek), St Theresa (Lambert); Corpus Christi (Great Falls) and  St Anthony Church (Culbertson) | |
| Defendants. | |

**COMPLAINT FOR DECLARATORY
RELIEF REGARDING PROPERTY
OF THE ESTATE**

**COMPLAINT FOR DECLARATORY RELIEF AND QUIET TITLE**

The Official Committee of Unsecured Creditors (the **"Committee"**) of the Roman Catholic Bishop of Great Falls, Montana, a Montana Religious Corporation Sole, Diocese of Great Falls-Billings (**"DGFM"**) brings this adversary proceeding against the defendants named herein and alleges as follows:

<u>**INTRODUCTION**</u>

1.      DGFM contends that assets to which it held or holds undisputed legal title were or are held in trust or otherwise for the benefit of its Parishes or other parts of itself.  As a result, DGFM contends the assets were or are not part of its estate and thus cannot be reached by creditors of DGFM, including the survivors of sex abuse comprising the Committee's constituency.

2.      DGFM has previously acknowledged that the Parishes are not separate legal persons or entities but are part of DGFM akin to divisions of a for-profit-corporation. Accordingly, they may not hold title to property or be the beneficiaries of a trust.

3.      The resolution of this litigation is critical to DGFM's chapter 11 estate because it will determine the magnitude of distributions to its creditors, including the survivors of the childhood sex abuse enabled by DGFM or whether DGFM can continue to avoid being held accountable to the survivors.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

## JURISDICTION

4.      This Court has jurisdiction over the instant adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334; 11 U.S.C. § 105; and Federal Rules of Bankruptcy Procedure 7001 and 7013.

5.      Venue in this judicial district is appropriate pursuant to 28 U.S.C. § 1409.

6.      This adversary proceeding, constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O).

## PARTIES

7.      On or about May 1, 2017, the United States Trustee appointed, the Committee, to represent DGFM's unsecured creditors pursuant to 11 U.S.C. § 1102(a)(1).

8.      The Roman Catholic Bishop of Great Falls Montana, a Montana Corporation Sole, is doing business as the Diocese of Great Falls Montana.

9.      The following are parishes DGFM located in the State of Montana:  Holy Rosary Parish, Billings, Montana; Our Lady of Lourdes Parish, Great Falls, Montana, Holy Family Parish Great Falls Montana, St Barnard (Billings); St Patrick Co-Cathedral (Billings); St Joseph (Plentywood); Holy Spirit (Great Falls); St Mary (Livingston); St Pius X (Billings); St John The Evangelist Church (Baker); St Bernard Church (Charlie Creek), St Theresa (Lambert); Corpus Christi (Great Falls) and  St Anthony Church (Culbertson). These parishes are sometimes collectively referred to herein as the "*Parishes*".

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

## THE DGFM BANKRUPTCY CASE

10.    On March 31, 2017 (the *"Petition Date"*), DGFM filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §101 et seq. (the

*"Bankruptcy Code"*).  DGFM continues to operate its business as a debtor in possession.

11.    DGFM's commencement of the above-captioned bankruptcy case as of the

Petition Date created an "estate" as defined in 11 U.S.C. § 541(a).

## PROPERTY OWNED BY DGFM WHICH IT CLAIMS
## IS NOT PROPERTY OF THE ESTATE

12.    On March 31, 2017, pursuant to 11 U.S.C. § 521 and Bankruptcy Rule

1007(b), DGFM filed its Statement of Financial Affairs and its Schedules of Assets and

liabilities.  On June 9, 2017, DGFM filed an Amended Statement of Financial Affairs and

Schedules A and B.

### Purported Parish Property

13.    DGFW holds legal title to real property which it contends is not property

of the estate because it is held in trust for the benefit of its Parishes and other institutions.

Schedule A/B:Assets-Real and Personal. Part 9, 55.1 Property [Dkt. No. 1].

14.    The property DGFM contends it holds in trust for its Parishes and other

institutions is listed on Exhibit 7 to DGFM's Schedules of Assets.  A true copy of Exhibit 7 is

attached hereto as **Exhibit A** and incorporated herein by reference.  The real property listed on

Exhibit A is referred to herein as the *"Disputed Real Property"* and the trust or trusts that

DGFM alleges it holds the Disputed Real Property in are referred to herein as the *"Disputed*

*Real Property Trusts"*.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

15.     In Exhibit A, DGFM contends the tax assessed value of the Disputed Real Property exceeds $70,000,000.

**The Gergen Trust.**

16.     Prior to this death, Father Gergen created a testamentary trust (the **"Gergen Trust"**) consisting of, among other things, an investment portfolio and mineral rights. A true copy of the Gergen Trust is attached hereto as **Exhibit B** and incorporated herein by reference.

17.     Pursuant to the express language of the Gergen Trust, Father Gergen made an absolute and unrestricted transfer of the residual assets of the Gergen Trust to DGFM.

18.     Notwithstanding the absolute and unrestricted transfer of the assets of the Gergen Trust to DGFM, DGFM contends it holds the assets transferred to it from the Gergen Trust, in trust for the "Gergen Beneficiaries".  The Committee is informed and believes that the Gergen Beneficiaries include the following unincorporated parishes: (i) Mary Queen of Peace Billings; (ii); Our Lady of Lourdes Parish, Great Falls, Montana; and (iii) Holy Family Parish Great Falls Montana.

19.     Schedule B, Personal Property, to DGFM's Schedules of Assets and Liabilities, indicates that DGFM holds legal title to certain cash and investment accounts relating to the Gergen Trust which it holds for the benefit of others and therefore does not constitute property of the estate (**"Disputed Gergen Trust Property"**).  The Disputed Gergen Trust Property is listed on exhibits 1 and 3 to the Schedules and includes the following personal property:

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

RBC Wealth Management – Gergen Estate Trust Fund - Stocks
Held in Trust fbo Gergen Beneficiaries
Approx Value: $1,086,467.45

Federal Farm Credit Bank
RBC Wealth Management – Gergen Estate Trust Fund - Bonds
Held in Trust fbo Gergen Beneficiaries
Approx Value: $368,763.35

Checking – Msgr E. Gergen Estate Account
FBO Gergen Beneficiaries
U.S. Bank
Approx Value: $16,221.09

**Purported Restricted Funds**.

20.     DGFM contends that that "U.S. Bank Stock" valued at $2,096,258.06 and "U.S. Bank-Bonds valued at $1,001,048.20 are "Permanently Restricted Funds" which it refers to as the Seminary Burse Fund and the Cemetery Care Funds. Schedule A/B Part 4, 14.1 and 16.1.

21.     The Committee is informed and believes that the original source of funding for the Cemetery Care Funds and the Seminary Burse Fund (and potentially the Seminary Exigency Fund which appears to be related to the Seminary Burse Fund) may not have been restricted to the uses DGFM contends (collectively the ***"Purported Restricted Funds"***).

22.     The Committee is informed and believes that these funds were not consistently segregated from unrestricted funds, but instead were commingled in bank and brokerage accounts with unrestricted cash and financial assets of DGFM.

**The Deposit and Loan Fund**.

23.     Until late 2016, DGFM owned legal title to, and operated and maintained the Diocese of Great Falls-Billings Deposit and Loan Fund (the ***"DLF"***).

**COMPLAINT FOR DECLARATORY
RELIEF REGARDING PROPERTY
OF THE ESTATE**

24.     The DLF consisted of both operating accounts containing cash and investment accounts containing stocks, bonds and other financial assets.

25.     The Committee is informed and believes that the funds in the DLF were initially deposited into the operating accounts (by Parishes and others affiliated with DGFM and that purport to have an interest in the DLF) where the funds were immediately commingled with DGFM's unrestricted cash before any transfers were made from the operating accounts into the DLF investment accounts.

26.     The Committee is informed and believes that the timing of these periodic transfers from the operating accounts into the DLF accounts were unrelated to when cash was deposited into the operating accounts but rather were entirely driven by liquidity and cash management needs of DGFM.

27.     Beginning In the fall or summer of 2016 and continuing through the early part of 2017, DGFM transferred cash and investment assets from its DLF valued at in excess of $15,500,000 to CASC without receiving consideration (the ***"DLF Transfers"***).

28.     DGFM has acknowledged in pleadings recently filed with this Court that the DLF ***"in a nutshell, is the 'bank' for savings accounts for the Parishes"*** thus admitting that the relationship between the Parishes and DGFM was that of debtor/creditor rather than trustee/beneficiary. *Limited Objection to Motion of the Official Committee of Unsecured Creditors for Exclusive and Irrevocable Authority to Commence, Prosecute and Settle Litigation, and Notice of Hearing [Doc. #:230]* filed by DGFM on November 16, 2017.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

29.     DGFM owned all legal and beneficial interests in all assets in the DLF at the time of the DLF Transfers.

30.     Schedule B, Personal Property, to DGFM's Schedules of Assets and Liabilities, indicates that CASC owns certain cash and investment accounts for the "benefit of D&L Fund" and which does not constitute property of the estate.  This personal property is listed on exhibits 1 and 3 to the Schedules and includes the following personal property which the Committee is informed and believes is commonly referred to as the Deposit and Loan Fund:

U.S. Bank Trust Stocks
Diocese of Great Falls-Billings Capital Asset Support Corporation ("CASC") Fund
Owned by CASC for Benefit of D&L Fund-- Approx Value: $7,334,487.50.

CASC - Catholic United Investment Trust International Equity Fund
Approx Value: $1,221,685.87

CASC – Catholic Extension Mission Diocese Fund
Mission Diocese Fund, LLC
Approximate Value: $667,577.92

U.S. Bank Trust Bonds and Notes
Diocese of Great Falls-Billings CASC
Owned by CASC for Benefit of D&L Fund
Approx Value: $4,325,726.50

Checking – CASC
Juridic Persons Deposit and Loan Account Owned by a Separate Incorporated Entity U.S. Bank
Approx Value: $2,489,507.44

31.     In response to Question 21 on its Statement of Financial Affairs, DGFM contends that cash accounts valued at $2,508,089.29 (listed on Exhibit 1) and investment accounts valued at $15,004,708 (listed on Exhibit 3) are held or controlled by DGFM but owned by other entities.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

## **DGFM'S CORPORATE STRUCTURE**

32.     The Roman Catholic Bishop of Great Falls is incorporated under Montana law as a "Corporation Sole". The Bishop holds legal title to all real and personal property of DGFM, including the property of the Parishes.

33.     DGFM acknowledges that its Parishes are not separate persons or entities but rather are mere "operating divisions." Central Administrative Office of the Roman Catholic Bishop of Great Falls of Montana, a Corporation Sole, Financial Statements as of June 30, 2016, and 2015, n.1. A true copy of relevant portions of the financial statements are attached hereto as **Exhibit C** and incorporated herein by reference.

34.     DGFM acknowledges that its Parishes do not hold title to property in its Policies Relation to Temporal Matters-Diocese of Great Falls-Billings ("*Policies*") at 2. True copies of relevant Portions of DGFM's Policies are attached hereto as **Exhibit D** and incorporated herein by reference.

35.     GFDM acknowledges that "since the Roman Catholic Bishop of Great Falls, Montana, a Corporation Sole, **is the only legal entity in the diocese**, no parish or other entity under the jurisdiction of the Bishop of the Diocese of Great Falls-Billings may enter into or execute contracts, leases, or other legal documents." Policies, at p. 22 (emphasis added); see also Policies at p. 31.

36.     No parish may enter into contracts, leases or other legal instruments. (Policies at 31).

**COMPLAINT FOR DECLARATORY RELIEF REGARDING PROPERTY OF THE ESTATE**

37.     The Disputed Real Property is owned by the Roman Catholic Bishop of Great Falls Montana. (Policies at 21).

38.     The Parishes are not legal persons or entities and have no separate legal existence from DGFM.

## FIRST CLAIM FOR RELIEF

**(Declaratory Relief: The Parishes are not separate legal persons or entities and cannot hold title to property or be the beneficiaries of a trust)**

39.     The Committee repeats and realleges each of the allegations contained in paragraphs 1 through 37 above as if fully set forth here.

40.     The Committee contends that the Parishes cannot hold legal title to property or be the beneficiaries of a trust and that all of the Disputed Real Property is property of the estate under section 541(a) of the Bankruptcy Code.

41.     DGFM claims, or may claim, that each of the Parishes may hold title to the Disputed Real Property or be the beneficiary of a trust and that the Disputed Real Property is not property of the estate under section 541(a) of the Bankruptcy Code.

42.     An actual controversy exists with respect to whether the Parishes are legal persons or entities separate from DGFM and may hold title to property or be the beneficiaries of a trust and whether the Disputed Real Property is property of the estate.

## SECOND CLAIM FOR RELIEF

**(Declaratory Relief: The Disputed Real Property Trusts are void under the doctrine of merger and the Disputed Real Property is property of DGFM's estate pursuant to 11 U.S.C § 541(a)(1))**

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

43.     The Committee repeats and realleges each of the allegations contained in paragraphs 1 through 41 above as if set forth here.

44.     Under the doctrine of merger, a valid trust cannot exist where, as here, the same person (DGFM) is both the sole trustee and beneficiary of the Disputed Real Property Trusts. (MCA section 72-38-402(1)(e)).

45.     The Committee contends that the Disputed Real Property Trusts, purportedly created by DGFM for the benefit of its Parishes, are  void under the doctrine of merger and that all Disputed Real Property is property of the estate.

46.     Defendants claim, or may claim, that the Disputed Real Property Trusts DGFM purportedly created are valid and the Disputed Real Property is held in trust for the Parishes.

47.     An actual controversy exists with respect to the whether the Disputed Real Property Trusts are void under the doctrine of merger and whether the Disputed Real Property is property of the estate.

## **THIRD CLAIM FOR RELIEF**

### **(Quiet Title)**

48.     The Committee repeats and realleges each of the allegations contained in paragraphs 1 through 46 above as if set forth here.

49.     The Committee is informed and believes that none of the alleged beneficial interests of Parishes, or any of them, in the Disputed Real Property were identified in the vesting deeds granted to DGFM.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

50.     None of the alleged beneficial or equitable interests of the Parishes, or any of them, in the Disputed Real Property were created, transferred or declared by an instrument in writing and subscribed by the party creating, transferring or declaring the interest.

51.     The Committee is informed and believes that no notice of the alleged beneficial or equitable interests of the Parishes, or any of them, in the Disputed Real Property is recorded in the real estate records maintained in any county of the State of Montana.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief: The Disputed Gergen Trust Property is property of DGFM's estate under 11 U.S.C. § 541(a)(1))

52.     The Committee repeats and realleges each of the allegations contained in paragraphs 1 through 50 above as if set forth here.

53.     Pursuant to the express language of the Gergen Trust, Father Gergen made an absolute and unrestricted transfer of assets to DGFM.

54.     The Committee contends that the Disputed Gergen Trust Property is an unrestricted asset of DGFM's estate free and clear of the interests of any other person, which may be used to pay its general creditors.

55.     The Gergen Beneficiaries, claim, or may claim, an interest in the Disputed Gergen Trust Property and DGFM may claim that the Disputed Gergan Trust Property is a permanently restricted asset not subject to the claims of general creditors.

56.     An actual controversy exists with respect to the interests of the estate in the Disputed Gergen Trust Property and whether the Gergan Trust Property is a restricted or unrestricted asset of the estate.

**COMPLAINT FOR DECLARATORY
RELIEF REGARDING PROPERTY
OF THE ESTATE**

## FIFTH CLAIM FOR RELIEF

### (Declaratory Relief: The Purported Restricted Funds are unrestricted property of the estate)

57.     The Committee repeats and realleges each of the allegations contained in paragraphs 1 through 55 above as if set forth here.

58.     The Committee contends that the Purported Restricted Funds are unrestricted assets of DGFM's estate which may be used to pay the claims of its creditors.

59.     DGFM claims that the Purported Restricted Funds are permanently restricted assets of the DFGM estate, free and clear of the interests of any other person and are not subject to the claims of general creditors.

60.     An actual controversy exists with respect to the interests of the estate in the Purported Restricted Funds and whether or not these funds are in fact restricted.

## SIXTH CLAIM FOR RELIEF

### (Declaratory Relief: The Assets in the DLF were property of the estate at the time of the DLF Transfers

61.     The Committee repeats and realleges each of the allegations contained in paragraphs 1 through 59 above as if set forth here.

62.     The Committee contends that all legal and beneficial interests in the DLF were owned by DGFM at the time of the DLF Transfers.

63.     DGFM contends that the beneficial interests in the DLF were held by others, including its Parishes, at the time of the DLF Transfers.

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

64.     An actual controversy exists with respect to whether DGFM owned all beneficial interests in the DLF Assets when they were transferred or whether it held them for the benefit of its Parishes and others at the time of the DLF Transfers.

**WHEREFORE**, the Committee prays for judgment as follows:

1.     Declaring that the Parishes are not legal persons or entities separate from DGFM under Montana law;

2.     Declaring that the Parishes may not hold title to property or be the beneficiaries of a trust;

3.     Declaring that the Disputed Real Property is property of the estate;

4.     Declaring that the Disputed Real Property Trust is void and unenforceable under the doctrine of merger and the Disputed Real Property is property of DGFM's estate;

5.     Declaring that DGFM owns the Disputed Real Property free and clear of any interests that were not created, transferred or declared in the deed or instrument transferring the Disputed Real Property to DGFM or recorded in the appropriate county real estate records;

6.     Declaring that the Disputed Gergen Trust Property is an unrestricted asset of the estate, free and clear of the interests of others and may be used to pay the claims of general creditors;

7.     Declaring that the Purported Restricted Funds are unrestricted assets of the estate, free and clear of the interests of others, and may be used to satisfy the claims of general creditors;

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

8.     Declaring that all legal and beneficial interests in the DLF were owned by DGFM at the time of the DLF Transfers and that the assets in the DLF were not held in trust for any of the Parishes or other third parties prior to the DLF Transfers; and

9.     For such other and further relief as the Court may deem just and proper.

Dated:  December 18, 2017                    Respectfully submitted,

                                             PACHULSKI STANG ZIEHL & JONES LLP

                                             By:    /s/ James I. Stang
                                                  James I. Stang (CA Bar No. 94435)
                                                  Kenneth H. Brown (CA Bar No. 100396)
                                                  Ilan D. Scharf (NY Bar No. 4042107)
                                                  Pachulski Stang Ziehl & Jones LLP
                                                  10100 Santa Monica Blvd., 13th Floor
                                                  Los Angeles, CA  90067
                                                  Telephone:  (310) 277-6910
                                                  Facsimile:  (310) 201-0760
                                                  E-mail:      jstang@pszjlaw.com
                                                               kbrown@pszjlaw.com
                                                               ischarf@pszjlaw.com

                                                  Attorneys for the Official Committee
                                                  of Unsecured Creditors

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

## EXHIBIT A

Exhibit 7

3/28/2017 1:45 PM
1 of 5

| Property County | Diocese/Parish/Other | Legal Description | Primary Owner City, State, Zip | Property Address | Property City, State, Zip | Land Value | Building Value | Total Value |
|---|---|---|---|---|---|---|---|---|
| Big Horn | Parish | S22, T08 S, R35 E, NENESE4SE4 | LODGE GRASS, MT 59050-0509 | not available | LODGE GRASS, MT 59050 | 5,600 | | 5,600 |
| Big Horn | Parish | S26, T07 S, R32 E, UND 1H6 INT: W2 | ASHLAND, MT 59003-0216 | not available | not available | 17,071 | | 17,071 |
| Big Horn | Parish | S24, T07 S, R32 E, UND 1H5 INT: SWNW, NSW4 | ASHLAND, MT 59003-0216 | not available | not available | 8,703 | | 8,703 |
| Big Horn | Parish | STEVENSON FOURTH ADD, S13, T05 S, R35 E, LTS 6-15 BLK 3 | LODGE GRASS, MT 59050-0550 | MAIN ST | LODGE GRASS, MT 59050 | 13,970 | 793,530 | 807,500 |
| Big Horn | Parish | S05, T05 S, R35 E, M & B TRACT LOCATED IN GOV LT3 2,4,3 | GREAT FALLS, MT 59403-1399 | not available | not available | 1,574 | | 1,574 |
| Big Horn | Parish | S08, T05 S, R26 E, M&B IN SWSE & NESW | GREAT FALLS, MT 59403-1399 | not available | not available | 1,464 | | 1,464 |
| Big Horn | Parish | S07, T05 S, R26 E, NW4SE4SWNE4 | GREAT FALLS, MT 59403-1399 | not available | not available | 5,600 | | 5,600 |
| Big Horn | Parish | S08, T05 S, R26 E, NW4NE4 | GREAT FALLS, MT 59403-1399 | not available | not available | 15,608 | | 15,608 |
| Big Horn | Parish | TAELMAN ADD (SANT XAVIER), S23, T04 S, R32 E, BLOCK 002, Lot 001, LTS 1-12, BLK 2 TAELMANS ADD | SANT XAVIER, MT 59075-0138 | not available | not available | 23,592 | | 23,592 |
| Big Horn | Parish | S23, T04 S, R32 E, E29W4, W25E4 (INCLUDES 19 AC ST XAVIER MISSION) | SANT XAVIER, MT 59075-0138 | not available | not available | 113,981 | | 113,981 |
| Big Horn | Parish | TAELMAN ADD (SANT XAVIER), S23, T04 S, R32 E, LTS 13-16 BLK 2 | SANT XAVIER, MT 59075-0138 | not available | not available | 23,592 | | 23,592 |
| Big Horn | Parish | TAELMAN ADD (SANT XAVIER), S23, T04 S, R32 E, BLOCK 001, Lot 007, LT 7 BLK 1 TAELMANS ADD | SANT XAVIER, MT 59075-0138 | not available | not available | 19,492 | | 19,492 |
| Big Horn | Parish | TAELMAN ADD (SANT XAVIER), S23, T04 S, R32 E, BLOCK 001, Lot 008, LTS 13-16 BLK 1 TAELMANS ADD | SANT XAVIER, MT 59075-0138 | not available | not available | 2,059 | | 2,059 |
| Big Horn | Parish | TAELMAN ADD (SANT XAVIER), S23, T04 S, R32 E, BLOCK 001, Lot 007, LT 8 BLK1 TAELMANS ADD | SANT XAVIER, MT 59075-0138 | not available | not available | 10,492 | | 10,492 |
| Big Horn | Parish | HENRICH ADD (SANT XAVIER), S26, T04 S, R32 E, LTS 1-2 BLK 3 | SANT XAVIER, MT 59075-0138 | not available | not available | 24,100 | | 24,100 |
| Big Horn | Parish | HENRICH ADD (SANT XAVIER), S26, T04 S, R32 E, LTS 3-4 BLK 3 | SANT XAVIER, MT 59075-0138 | not available | not available | 24,100 | | 24,100 |
| Big Horn | Parish | PRANDO ADD (SANT XAVIER), S26, T04 S, R32 E, Lot 010, LT 10 BLK 2 PRANDO ADD | SANT XAVIER, MT 59075-0138 | not available | not available | 15,700 | | 15,700 |
| Big Horn | Parish | PRANDO ADD (SANT XAVIER), S26, T04 S, R32 E, Lot 001, LT 1 BLK 2 PRANDO ADD | SANT XAVIER, MT 59075-0138 | not available | not available | 5,200 | | 5,200 |
| Big Horn | Parish | PRANDO ADD (SANT XAVIER), S26, T04 S, R32 E, LTS 5-9 BLK 2 PRANDO ADD | SANT XAVIER, MT 59075-0138 | not available | not available | 9,600 | | 9,600 |
| Big Horn | Parish | PRANDO ADD (SANT XAVIER), S26, T04 S, R32 E, Lot 003, LT3 20.21 BLK 2 | SANT XAVIER, MT 59075-0138 | not available | not available | 3,100 | | 3,100 |
| Big Horn | Parish | PRANDO ADD (SANT XAVIER), S26, T04 S, R32 E, Lot 003, LTS 3-9 BLK2 PRANDO ADD | SANT XAVIER, MT 59075-0138 | not available | not available | 3,100 | | 3,100 |
| Big Horn | Parish | HENRICH ADD (SANT XAVIER), S26, T04 S, R32 E, BLOCK 001, Lot 013, LTS 13-24 BLK 1 HENRICH ADD | SANT XAVIER, MT 59075-0138 | not available | not available | 10,450 | | 10,450 |
| Big Horn | Parish | HENRICH ADD (SANT XAVIER), S26, T04 S, R32 E, BLOCK 001, Lot 001, LTS 1-12 BLK 1 HENRICH ADD | SANT XAVIER, MT 59075-0138 | not available | not available | 13,600 | | 13,600 |
| Big Horn | Parish | HENRICH ADD (SANT XAVIER), S26, T04 S, R32 E, BLOCK 001, Lot 009, LTS 9,10 BLK1 HENRICH ADD | SANT XAVIER, MT 59075-0138 | not available | not available | 3,100 | | 3,100 |
| Big Horn | Parish | BIG HORN R31 E, UND 1H5 INT: SE4, S2NE4, SE4NW4, L1,2,3,4, S2N2, S2 | ASHLAND, MT 59003-0216 | not available | not available | 16,533 | | 16,533 |
| Big Horn | Parish | S10, T03 S, R31 E, UND 1H5 INT E2 | ASHLAND, MT 59003-0216 | not available | not available | 8,098 | | 8,098 |
| Big Horn | Parish | S10, T03 S, R31 E, UND 1H5 INT: NXNW4 | ASHLAND, MT 59003-0216 | not available | not available | 2,070 | | 2,070 |
| Big Horn | Parish | S11, T03 S, R31 E, UND 1H5 INT: W2W2 | ASHLAND, MT 59003-0216 | not available | not available | 4,250 | | 4,250 |
| Big Horn | Parish | S14, T03 S, R31 E, UND 1H5 INT: W2W4W4 | ASHLAND, MT 59003-0216 | not available | not available | 2,169 | | 2,169 |
| Big Horn | Parish | S15, T03 S, R31 E, UND 1H5 INT | ASHLAND, MT 59003-0216 | not available | not available | 3,905 | | 3,905 |
| Blaine | Parish | CROW AGENCY ORIGINAL TOWNSITE, S01, T03 S, R24 E, LT 11 BLK 3 | CROW AGENCY, MT 59022 | MAKAWASHA AVE | CROW AGENCY, MT 59022 | 13,840 | | 13,840 |
| Blaine | Parish | HARDIN FOURTH ADD, S22, T01 S, R33 E, LTS 1-12 BLK 13 | HARDIN, MT 59034-2510 | 712 N CUSTER AVE | HARDIN, MT 59034 | 81,144 | 596,840 | 677,984 |
| Blaine | Parish | SWK, PRT CO5 #3215B | HARDIN, MT 59034 | WORD AVE N | HARDIN | 21,456 | | 21,456 |
| Blaine | Parish | S30, T2N N, R24 E, SWSE4 & E2SE4 | HARLEM, MT 59526-1125 | WORD AVE N | HARLEM | 14,486 | | 14,486 |
| Blaine | Parish | S30, T2N N, R24 E, NWNW | HARLEM | 1 WORD AVE N | HARLEM | 5,903 | | 5,903 |
| Blaine | Parish | S05, T2N H, R25 E, NWNWSESW | HARLEM, MT 59526-1125 | 209 S 4TH ST | HARLEM, MT 59526 | 11,950 | | 11,950 |
| Blaine | Parish | SANDS ADD, S18, T32 N, R23 E, BLOCK 003, Lot 007, COS #1203401 LOT 8-1 OF AMENDED PLAT OF LOTS 7 & 1 | HARLEM, MT 59526-1125 | 212 1ST AVE SE | HARLEM, MT 59526 | 6,202 | | 6,202 |
| Blaine | Parish | S32, T25 N, R23 E, W71 AC W25 | HARLEM, MT 59526-9999 | not available | not available | 10,310 | 10,310 | |
| Blaine | Parish | S39, T34 N, R26 E, E2NE4SE4 | VOLF POINT, MT 59201-9999 | not available | not available | 4,342 | | 4,342 |
| Carbon | Parish | S16, T34 N, R26 E, EDNE4SE4 | CHINOOK, MT 59523 | 424 6TH ST | CHINOOK, MT 59523 | 45,066 | | 45,066 |
| Carbon | Parish | RED LODGE SECOND ADDN, S27, T05 S, R20 E, 2ND ADDN LT 1 BLK 16 | RED LODGE, MT 59068-1067 | not available | not available | 6,422 | | 6,422 |
| Carbon | Parish | RED LODGE SECOND ADDN, S27, T05 S, R20 E, 2ND ADDN 5 30 LT 3 BLK 9 | RED LODGE, MT 59068-1067 | 314 CHURCH AVE | RED LODGE, MT 59068 | 55,625 | | 55,625 |
| Carbon | Parish | RED LODGE SECOND ADDN, S27, T05 S, R20 E, RL 2ND ADDN LTS 4-6 BLK 9 | RED LODGE, MT 59068-1008 | 1 WORD AVE N | RED LODGE, MT 59068 | 66,875 | 118,790 | 185,665 |
| Carbon | Parish | DOT CALM RANCHES (SUB), S31, T05 S, R21 E, DOT CALM RANCHES S 6 81 LT 33 COS 2165 CORR | BRIDGER, MT 59014 | 209 S 4TH ST | BRIDGER, MT 59014 | 11,948 | 111,552 | 123,600 |
| Carter | Parish | SANDS ADD, S18, T32 N, R23 E, A M&B TRACT OF DEVRIES CEMETERY IN NWNW4 | HARLEM, MT 59526-1125 | not available | not available | 11,950 | | 11,950 |
| Carter | Parish | FROMBERG MISCELLANEOUS TRACTS, S17, T05 S, R23 E, A METES & BOUNDS DESCRIPTION | FROMBERG, MT 59029-2899 | not available | not available | 37,002 | | 37,002 |
| Carter | Parish | FROMBERG MISCELLANEOUS TRACTS, S17, T05 S, R23 E, A METES & BOUNDS DESCRIPTION | FROMBERG, MT 59029-9999 | not available | not available | 37,502 | | 37,502 |
| Carter | Parish | JOLIET TOWNSITE, S27, T03 S, R18 E, A M&B DESCRIPTION 150X 130 | JOLIET, MT 59041-9999 | St. Philip Mission | JOLIET, MT 59041 | 334,760 | 334,760 | |
| Carter | Parish | JOLIET, MISCELLANEOUS TRACTS, S14, T04 S, R22 E, A M&B DESCRIPTION 150X 130 | JOLIET, MT 59041 | not available | not available | 37,502 | 334,760 | 334,760 |
| Carter | Parish | PARK ADD (EKALAKA), B32, T02 N, R58 E, BLOCK 007, Lot 006, LOT 6 | EKALAKA, MT 59324-0294 | not available | not available | 65,550 | | 65,550 |
| Carter | Parish | PARK ADD (EKALAKA), B32, T02 N, R58 E, BLOCK 007, Lot 007, LOT 7 | EKALAKA, MT 59324-0294 | not available | not available | 16,529 | | 16,529 |
| Carter | Parish | PARK ADD (EKALAKA), B32, T02 N, R58 E, BLOCK 007, Lot 005, LOT 5 | EKALAKA, MT 59324-0294 | not available | not available | 3,170 | 3,170 | |
| Carter | Parish | PARK ADD (EKALAKA), B32, T02 N, R58 E, BLOCK 004, Lot 004, LOT 4 | EKALAKA, MT 59324-0294 | not available | not available | 4,839 | | 4,839 |
| Cascade | Parish | S19, T18 N, R03 W, IN SWNW NW1/4 | CASCADE, MT 59421 | 313 1ST ST N | CASCADE, MT 59421 | 48,351 | | 48,351 |
| Cascade | Parish | BELT ORIGINAL TOWNSITE, S26, T19 N, R06 E, BLOCK 002, Lot 001, LTS 23-32 | BELT, MT 59412 | 1327 1ST HIGHWAY AT | FORT SHAW, MT 59443 | 26,792 | 132,654 | 159,446 |
| Cascade | Parish | FORT SHAW ORIGINAL TOWNSITE, S12, T20 N, R02 W, Lot 110, LOT 110 | STOCKETT, MT 59480-0740 | 692 STOCKETT RD | STOCKETT, MT 59480-0740 | 27,870 | 101,650 | 128,452 |
| Cascade | Parish | GREAT FALLS ORIGINAL TOWNSITE, S12, T20 N, R03 E, BLOCK 243, Lot 009, W 10 FT LT 9, LTS 10-14 | GREAT FALLS, MT 59403-1399 | 1327 1ST HIGHWAY AT | GREAT FALLS, MT 59401 | 31,500 | 89,120 | 120,452 |
| Cascade | Parish | GREAT FALLS ORIGINAL TOWNSITE, S07, T20 N, R04 E, BLOCK 243, Lot 001, LT 1 4 AND VACATED STREET | GREAT FALLS, MT 59403-1399 | 715 3RD AVE N | GREAT FALLS, MT 59401 | 105,000 | 1,200,000 | 1,306,000 |
| Cascade | Parish | GREAT FALLS TENTH ADDITION, S10, T20 N, R04 E, BLOCK 009, Lot 017, COS #1 ... | GREAT FALLS, MT 59403-1399 | 1303 5TH AVE S | GREAT FALLS, MT 59405 | 305,000 | 1,000,000 | 1,305,000 |
| Cascade | Parish | BLACK EAGLE ADD, S08, T20 N, R04 E, BLOCK 004, Lot 001, LOTS 1-2 | GREAT FALLS, MT 59403-1399 | 2812 2ND AVE S | GREAT FALLS, MT 59405 | 128,500 | 128,500 | |
| Cascade | Parish | BLACK EAGLE ADD, S08, T20 N, R04 E, BLOCK 004, Lot 001, LOTS 1-7, 10-14 | GREAT FALLS, MT 59403-1399 | 2816 CENTRAL AVE | GREAT FALLS, MT 59401 | 288,000 | 750,000 | 1,038,000 |

Exhibit 7

| Property County | Diocese/Parish/Other | Legal Description | Primary Owner City, State, Zip | Property Address | Property City, State, Zip | Land Value | Building Value | Total Value |
|---|---|---|---|---|---|---|---|---|
| Cascade | Parish | SUNRISE HOMES ADD NO 5, S08, T20 N, R04 E, BLOCK 001, Lot 005, E5FT L5 & ALL L6 & W26FT L7 | GREAT FALLS, MT 59401-3399 | 3420 7TH AVE S | GREAT FALLS, MT 59405-3409 | 47,250 | 133,850 | 181,100 |
| Cascade | Parish | BEEBE TRACTS, S09, T20 N, R04 E, Lot 02A, COS #4433 LTS 22A & 23 | GREAT FALLS, MT 59401-3399 | 2014 4TH ST S | GREAT FALLS, MT 59405 | 316,646 | 5,000,000 | 5,316,646 |
| Cascade | Parish | ST PETER & PAUL ADDITION, S09, T20 N, R04 E, BLOCK 001, Lot 005 | GREAT FALLS, MT 59401-3399 | 200 4TH ST S | GREAT FALLS, MT 59405 | 693,000 | 700,000 | 1,393,000 |
| Cascade | Parish | N R3V DIVIDEV HEIGHTS ADD NO 2, PT 1, S09, T20 N, R04 E, BLOCK 001, Lot 056, 53-010 | GREAT FALLS, MT 59401-3399 | 413 22ND AVE NE | GREAT FALLS, MT 59404 | 181,171 | 1,750,000 | 1,931,171 |
| Cascade | Parish | S36, T21 N, R03 E, IN SESE MK X | GREAT FALLS, MT 59401-3399 | 1323 SMELTER AVE NE | BLACK EAGLE, MT 59414 | 91,476 | 200,000 | 291,476 |
| Chouteau | Parish | GERALDINE ORIGINAL TOWNSITE, S23, T21 N, R11 E, BLOCK 002, Lot 001, LOTS 1-2 | GERALDINE, MT 59446-0099 | not available | not available | 5,000 | 125,000 | 130,000 |
| Chouteau | Parish | FORT BENTON ORIGINAL TOWNSITE, S23, T24 N, R08 E, BLOCK 002, Lot 005, LOTS 19A & 20 | FORT BENTON, MT 59442-0668 | 1520 CHOUTEAU ST | FORT BENTON, MT 59442 | 21,250 | 9,560 | 28,590 |
| Chouteau | Parish | FORT BENTON ORIGINAL TOWNSITE, S23, T24 N, R08 E, BLOCK 003, Lot 005, LOTS 5-7 | FORT BENTON, MT 59442-0668 | 1624 CHOUTEAU ST | FORT BENTON, MT 59442 | 22,680 | 149,620 | 172,300 |
| Chouteau | Parish | FORT BENTON ORIGINAL TOWNSITE, S23, T24 N, R08 E, BLOCK 044, Lot 001, LOTS 1-14 | FORT BENTON, MT 59442-0668 | 1223 19TH ST | FORT BENTON, MT 59442 | 22,890 | 150,000 | 172,890 |
| Custer | Parish | LEHFELDT ADD (BIG SANDY), S19, T29 N, R13 E, BLOCK 006, Lot 005, LOTS 1, 3, 5, 7, 9, & 11 | BIG SANDY, MT 59520-0020 | not available | not available | 17,500 | 150,000 | 167,500 |
| Custer | Parish | MILES CITY ORIGINAL TOWNSITE, S34, T08 N, R47 E, BLOCK 001, Lot 001, ALL BLK 7 | MILES CITY, MT 59301-2601 | 520 N MONTANA AVE | MILES CITY, MT 59301 | 200,190 | | 200,190 |
| Custer | Parish | MILES ADDITION, S34, T08 N, R47 E, BLOCK 008, Lot 001 - 009 | MILES CITY, MT 59301-2601 | 3621 S HAVEN AVE | MILES CITY, MT 59301 | 33,083 | | 33,083 |
| Custer | Parish | MILES ADDITION, S34, T08 N, R47 E, BLOCK 002, Lot 010, S 1'10' OF W'E1'12, S 1'0'LT 13, ALL LT 14 | MILES CITY, MT 59301-2601 | 1915 PALMER ST | MILES CITY, MT 59301 | 11,783 | 115,637 | 127,400 |
| Custer | Parish | MILES ADDITION, S34, T08 N, R47 E, BLOCK 002, Lot 012, S 1'0' OF L16, L17 - L18 | MILES CITY, MT 59301-2601 | 401 N MONTANA ST | MILES CITY, MT 59301 | 14,525 | 104,550 | 119,075 |
| Daniels | Parish | SCOBEY ORIG AMEND (BLKS 13-26), S15, T35 N, R49 E, BLOCK 017, LTS 14 & N2 OF LT5 | SCOBEY, MT 59263-0827 | not available | not available | 42,000 | | 42,000 |
| Dawson | Parish | GLENDIVE ORIGINAL TOWNSITE, S28, T16 N, R55 E, BLOCK 016, Lot 005, LOTS 5-6 | GLENDIVE, MT 59330-0308 | not available | not available | 14,250 | | 14,250 |
| Dawson | Parish | GLENDIVE ORIGINAL TOWNSITE, S21, T16 N, R55 E, BLOCK 004, Lot 009, PTS 8, 9, 10, 11, 12 BLK18 | GLENDIVE, MT 59330-0308 | not available | not available | 24,575 | | 24,575 |
| Dawson | Parish | GLENDIVE ORIGINAL TOWNSITE, S28, T16 N, R55 E, BLOCK 016, Lot 013, LOTS 13 THRU 20 BLK 18 GLD | GLENDIVE, MT 59330-0308 | not available | not available | 34,500 | | 34,500 |
| Dawson | Parish | RICHEY HEIGHTS ADD, S29, T22 N, R52 E, BLOCK 004, Lot 010 | RICHEY, MT 59259 | not available | not available | 7,508 | | 7,508 |
| Dawson | Parish | RICHEY HEIGHTS ADD, S29, T22 N, R52 E, BLOCK 008, Lot 011, ALL LOT 11 PT LOTS 12-13 | RICHEY, MT 59259 | not available | not available | 4,021 | | 4,021 |
| Fallon | Parish | S20, T05 N, R54 E, NE | PLEVNA, MT 59344-0085 | not available | not available | 11,075 | | 11,075 |
| Fallon | Parish | SAINT JOHN ADDITION, S13, T07 N, R59 E - TRACT IN SWSW | BAKER, MT 59313-1519 | 210 W CENTER AVE | BAKER, MT 59313 | 10,138 | | 10,138 |
| Fallon | Parish | S14, T07 N, R60 E - TRACT IN N2NE - 8.40 ACRES | BAKER, MT 59313-1519 | 9 SAINT JOHNS LN | BAKER, MT 59313 | 198,000 | | 198,000 |
| Fallon | Parish | PLEVNA ORIGINAL TOWNSITE 066, S30, T08 N, R58 E, BLOCK 006, Lot 005 - 007 | PLEVNA, MT 59344 | CONISER AVE W | PLEVNA, MT 59344 | 5,300 | 138,480 | 143,480 |
| Fergus | Parish | S31, T16N, R58E - PLEVNA CATHOLIC CEMETERY - 5 ACRES | BAKER, MT 59313-1519 | not available | not available | 13,820 | | 13,820 |
| Fergus | Parish | MOORE SECOND ADD, S16, T14 N, R18 E, BLOCK 004, Lot 004 - 006, Lot 01A | MOORE, MT 59464 | not available | not available | 1,138 | | 1,138 |
| Fergus | Parish | S10, T15 N, R18 E, TRACT IN SE (CEMETARY) CONTAINING 16.950 ACRES | LEWISTOWN, MT 59403-1399 | 124 W BROADWAY ST | LEWISTOWN, MT 59457 | 73,610 | 250,000 | 323,610 |
| Fergus | Parish (beneficial interest) | PARTITION PLAT DISTRIBUTION LOTS, T19 N, R19 E, BLOCK 002, Lot 004, & LEWISTOWN TRACT 30 | LEWISTOWN, MT 59403-1399 | 1003 CASINO TERR | LEWISTOWN, MT 59457 | 6,273 | 95,327 | 101,600 |
| Fergus | Parish (joint ownership) | LEWISTOWN ORIGINAL TOWNSITE, S04, T14 N, R19 E, BLOCK 000, Lot 01A, JANET ADDITION OF COMMONS AREA | LEWISTOWN, MT 59403-1399 | not available | not available | 1,700 | | 1,700 |
| Fergus | Parish | WARWICK ORIG TOWN DINWERS, S20, T17 N, R18 E, BLOCK 001, Lot 011 | LEWISTOWN, MT 59403-1399 | not available | not available | 6,700 | | 6,700 |
| Garfield | Parish | S26, T21 N, R24 E, TRACT IN N2S2 - BLOCK 000, Lot 000, - 037 | LEWISTOWN, MT 59403-1399 | 704 CHOUTEAU AVE | LEWISTOWN, MT 59430 | 45 | | 45 |
| Garfield | Parish | S07, T16 N, R22 E, TRACT IN N4NE - CEMETARY CONTAINING 1.001 ACRES | GREAT FALLS, MT 59401-3399 | not available | not available | 8,800 | 8,800 | |
| Garfield | Parish | S26, T21 N, R18 E, WINIFRED OUTLOT 1-140-SF TRACT IN NE5W4 AMENDED PLAT M& A TRACT. SEE 8W | WINIFRED, MT 59489-9999 | 504 MAIN ST | WINIFRED, MT 59489 | 4,604 | | 4,604 |
| Garfield | Parish | JORDAN ORIGINAL TOWNSITE, S17, T18 N, R38 E, BLOCK 005, Lot 007, LOT 8-9 & S 20' OF LOT 07 & NE 4 | GREAT FALLS, MT 59401-3399 | 412 LEAVITT AVE | JORDAN, MT 59337 | | | |
| Golden Valley | Parish | S17, T18 N, R38 E, MANE SCHULT, MODEL MAIN ST. YEAR 2016, SIZE 16X76 | GREAT FALLS, MT 59401-3399 | CIRCLE | CIRCLE, MT 59215-0160 | 5,450 | 595,830 | 601,280 |
| Golden Valley | Parish | S04, T14 N, R18 E, T & M W TRACT IN T 14,16,18 & 21 ROMAN CATHOLIC CHURCH | ROUNDUP, MT 59072-2425 | CIRCLE | CIRCLE, MT 59215-0160 | 6,035 | | 6,035 |
| Hill | Parish | MILLS CO FIRST ADD (RYEGATE), S06, T09 N, R19 E, BLOCK 001, Lot 007 - 008, Lot 007A | ROUNDUP, MT 59072-2425 | 355 KEMP ST | RYEGATE, MT 59074 | 1,700 | | 1,700 |
| Hill | Parish | NELSON SECOND ADD (BOX ELDER), S05, T30 N, R14 E, BLOCK 002, Lot 007, LTS 7 & 8 | BOX ELDER, MT 59521-3009 | 355 MAIN ST E | BOX ELDER, MT 59521 | 8,400 | 228,550 | 236,950 |
| Hill | Parish | NELSON SECOND ADD (BOX ELDER), S05, T30 N, R14 E, BLOCK 002, Lot 009, LTS 9 AND 10 | BOX ELDER, MT 59521-3009 | 355 MAIN ST E | BOX ELDER, MT 59521 | 10,000 | 513,500 | 523,500 |
| Hill | Parish | INVERNESS ORIGINAL TOWNSITE, S03, T32 N, R08 E, BLOCK 000, Lot 005, LTS 5 AND 6 EXCEPT 20 SQ FT IN | CHESTER, MT 59522-0647 | not available | not available | 6,000 | | 6,000 |
| Hill | Parish | INVERNESS ORIGINAL TOWNSITE, S03, T32 N, R09 E, BLOCK 002, Lot 01A | CHESTER, MT 59522-0647 | not available | not available | 10,840 | | 10,840 |
| Hill | Parish | PHILLIP FIRST ADD (RUDYARD), S03, T32 N, R09 E, BLOCK 001, Lot 005 | CHESTER, MT 59522-0647 | not available | not available | 5,500 | | 5,500 |
| Hill | Parish | PHILLIP FIRST ADD (RUDYARD), S03, T32 N, R09 E, BLOCK 001, Lot 006 | CHESTER, MT 59522-0647 | not available | not available | 3,800 | | 3,800 |
| Hill | Parish | HINGHAM ORIGINAL TOWNSITE, S03, T32 N, R08 E, BLOCK 007, Lot 006, LOTS 1,2,3 | CHESTER, MT 59522-0647 | not available | not available | 9,400 | | 9,400 |
| Hill | Parish | PEPIN SECOND ADD, S08, T32 N, R16 E, BLOCK 2, LTS 14-19 PARISH CENTER | CHESTER, MT 59522-0647 | not available | not available | 9,400 | | 9,400 |
| Hill | Parish | PEPIN SECOND ADD, S08, T32 N, R16 E, BLOCK 2, LTS 20-26 ELEMENTARY | GREAT FALLS, MT 59403-1399 | 420 7TH AVE | HAVRE, MT 59501-4009 | 32,695 | | 32,695 |
| Hill | Parish | PEPIN SECOND ADD, S08, T32 N, R16 E, BLOCK 2, LTS 1-6 HIGH SCHOOL | GREAT FALLS, MT 59403-1399 | 331 7TH AVE | HAVRE, MT 59501 | 20,375 | | 20,375 |
| Hill | Parish | PEPIN SECOND ADD, S08, T32 N, R16 E, BLOCK 2, LT 8-9 CHURCH SITE HERE | GREAT FALLS, MT 59403-1399 | 301 EAST HILL AVE | GEYSER, MT 59447-0002 | 2,300 | 257,580 | 259,880 |
| Hill | Parish | PEPIN SECOND ADD, S08, T32 N, R16 E, BLOCK 2, LTS 8-13 CENTRAL BUILDING | GREAT FALLS, MT 59403-1399 | not available | not available | 2,300 | | 2,300 |
| Hill | Parish | PEPIN SECOND ADD, S08, T32 N, R16 E, BLOCK 2, Lot 00, LTS 10 13 RECTORY | HAVRE, MT 59501-4009 | 419 5TH AVE | HAVRE, MT 59501 | 27,470 | | 27,470 |
| Hill | Parish | HAVRE ORIGINAL TOWNSITE, S08, T32 N, R16 E, BLOCK 000, Lot 01A | HAVRE, MT 59501-4009 | 654 4TH ST | HAVRE, MT 59501 | 20,720 | 222,640 | 243,360 |
| Hill | Parish | HAVRE ORIGINAL TOWNSITE, S08, T32 N, R16 E, BLOCK 02, Lot 001 | HAVRE, MT 59501-4009 | 417 5TH AVE | HAVRE, MT 59501 | 9,360 | 82,620 | 91,980 |
| Hill | Parish | S11, T33 N, R15 E, 9 AC IN SWSW | HAVRE, MT 59501-4009 | not available | not available | 18,900 | | 18,900 |
| Judith Basin | Parish | S32, T28 N, R10 E, PT NENE4 | HOBSON, MT 59452-9999 | 210 2ND AVE E | HOBSON, MT 59452 | 325 | | 325 |
| Judith Basin | Parish | HOBSON TOWNSITE, S06, T14 N, R12 E, BLOCK 015, Lot 004, LOTS 4-6 | HOBSON, MT 59452-9999 | not available | not available | 10,300 | | 10,300 |
| Judith Basin | Parish | STANFORD FIRST ADDITION, S16, T16 N, R12 E, BLOCK 002, Lot 001, L1&2 | GREAT FALLS, MT 59403-1399 | not available | not available | 8,200 | 106,800 | 115,000 |
| Judith Basin | Parish | STANFORD FIRST ADD, S16, T16 N, R12 E, BLOCK 001, Lot 001, L1-4 | GREAT FALLS, MT 59403-1399 | not available | not available | 13,450 | | 13,450 |
| Liberty | Parish | GEYSER FIRST ADDITION, S06, T17 N, R10 E, BLOCK 005, Lot 002 | GEYSER, MT 59447-0002 | not available | not available | 2,300 | 257,580 | 259,880 |
| Liberty | Parish | KOLSTAD ADDITION (CHESTER), S28, T32 N, R06 E, Lot 001, CHURCH SITE HERE | CHESTER, MT 59522-0647 | not available | not available | 14,520 | | 14,520 |
| Liberty | Parish | KOLSTAD ADDITION (CHESTER), S28, T32 N, R06 E, Lot 021, RECTORY | CHESTER, MT 59522-0647 | not available | not available | 24,684 | | 24,684 |
| McCone | Parish | CIRCLE FIRST ADD, S19, T21 N, R48 E, BLOCK 01, Lot 07, 1,7,8,9,10, PT 6 & 11 | CIRCLE, MT 59215 | 107 2 AVE SW | CIRCLE, MT 59215 | 13,005 | 617,390 | 630,380 |
| McCone | Parish | NEW VIDA TOWNSITE, S13, T24 N, R48 E, BLOCK 022, Lot 001, 50760 SQUARE FEET, LT 1, 2, 3, 4, 5, 6 | GREAT FALLS, MT 59403-1399 | SHELL RD | VIDA, MT 59274 | 2,538 | 107,962 | 110,400 |

Exhibit 7

| Property County | Diocese/Parish/Other | Legal Description | Primary Owner City, State, Zip | Property Address | Property City, State, Zip | Land Value | Building Value | Total Value |
|---|---|---|---|---|---|---|---|---|
| McCone | Parish | S20, T24 N, R49 E, M & B TRACT IN NWNWNW, SEE BK D17 PG 80 CONT (2.0 AC +/-) | GREAT FALLS, MT 59403-1399 | not available | not available | 18,500 | | 18,500 |
| Musselshell | Parish | MILWAUKEE LAND CO 1ST RDP, S13, T08 N, R26 E, BLOCK 012, Lot 001, LTS 1-12 BLK 12 ROUNDUP 1ST ADD | ROUNDUP, MT 59072-2425 | not available | not available | 37,850 | 538,050 | 575,900 |
| Musselshell | Parish | MILWAUKEE LAND CO 1ST MSHL, S28, T08 N, R26 E, BLOCK 012, Lot 007, LTS 1-5 BLK 95 MT 59059-9999 | MUSSELSHELL, MT 59059-9999 | not available | not available | 2,650 | 54,750 | 57,400 |
| Musselshell | Parish | S30, T10 N, R31 E, PARCEL IN NWNSE, | GAGE, MT 59403-1399 | not available | not available | 12,535 | 74,765 | 87,300 |
| Park | Parish | S23, T09 S, R09 E, C.O.S. 28, PARCEL H | GARDINER, MT 59030 | 705 SCOTT ST W | not available | 104,784 | | 104,784 |
| Park | Parish | S24, T03 S, R08 E, CALVARY CEMETERY TRACT AD OF PLAT 350 | GREAT FALLS, MT 59403-1399 | not available | not available | 74,103 | | 74,103 |
| Park | Parish | S06, T02 S, R10 E, ACRES 0.234, CALVARY CEMETERY TRACT B & C OF PLAT 350A | GREAT FALLS, MT 59403-1399 | not available | not available | 98,004 | | 98,004 |
| Park | Parish | S19, T03 S, R10 E, LOTS 11-20, BLK 329 | LIVINGSTON, MT 59047 | 511 S F ST | not available | 1,167,515 | | 1,167,515 |
| Park | Parish | S28, T02 N, R09 E, METES & BOUNDS OF DEED BK 43 25&286 IN NE OF 28 & NW4 OF 27 (CEMENTARY)(11.5 | BROADUS, MT 59317 | not available | not available | 35,238 | | 35,238 |
| Petroleum | Parish | ARNET ADD CLYDE PARK, S30, T03, T02 N, R09 E, BLOCK 3, Lot 13-20 | CLYDE PARK, MT 59018 | 206 1ST AVE NO | not available | 27,038 | | 27,038 |
| Petroleum | Parish | S09, T14 N, R27 E, ORIGINAL WINNETTBLK | ROUNDUP, MT 59072-2425 | not available | not available | 1,650 | | 1,650 |
| Petroleum | Parish | S05, T14 N, R27 E, ORIGINAL VANNETI BLOCK 14 LOTS 6-7 | ROUNDUP, MT 59072-2425 | not available | not available | 2,100 | 33,800 | 35,900 |
| Phillips | Parish | S05, T14 N, R27 E, ORIGINAL WINNETT BLOCK 018 LOTS 15 & 16 | ROUNDUP, MT 59072-2425 | not available | not available | 1,050 | | 1,050 |
| Phillips | Parish | DODSON ORIGINAL TOWNSITE, S32, T31 N, R27 E, BLOCK 002, LOTS 13, 15 & NORTH 90 | DODSON, MT 59524 | 217 2ND ST E | not available | 4,700 | 216,020 | 220,720 |
| Phillips | Parish | DODSON ORIGINAL TOWNSITE, S32, T31 N, R27 E, BLOCK 002, SOUTH HALF OF LOTS | DODSON, MT 59524 | 218 2ND ST E | not available | 3,260 | | 3,260 |
| Phillips | Parish | S26, T30 N, R31 E, WEST HALF SE4SW4 BK 55 PG 265 | MALTA, MT 59538-0070 | not available | not available | 1,900 | | 1,900 |
| Powder River | Parish | TRAUTMAN ADD (BROADUS), S34, T04 S, R51 E, BLOCK 010, Lot 003, LT 3 BLK 10 TA | MILES CITY, MT 59301-1016 | 217 N NVLBUR AVE | not available | 1,900 | 37,030 | 38,930 |
| Powder River | Parish | TRAUTMAN ADD (BROADUS), S34, T04 S, R51 E, BLOCK 010, Lot 001, LTS 12 BLK 10 TA | MILES CITY, MT 59301-1016 | 225 N NVLBUR AVE | not available | 23,850 | | 23,850 |
| Prairie | Parish | MILDRED ORIGINAL TOWNSITE, S20, T11 N, R49 E, BLOCK 009, Lot 004, LT 4-5 | GLENDIVE, MT 59330-0036 | not available | not available | 710 | | 710 |
| Prairie | Parish | TERRY ORIGINAL TOWNSITE, S16, T10 N, R48 E, BLOCK 018, LOTS 1 THRU 4 | GLENDIVE, MT 59330-0036 | MCDONALD AVE | not available | 7,520 | 238,780 | 246,310 |
| Richland | Parish | S24, T02 N, R59 E, LOTS 8 & BLK 5 | SAVAGE, MT 59262-0065 | not available | not available | | | |
| Richland | Parish | S11, T22 N, R55 E, LOTS 9 8 BLK 3 | GREAT FALLS, MT 59403-1399 | MAIN ST | not available | 13,510 | 49,450 | 62,560 |
| Richland | Parish | S11, T22 N, R55 E, LOTS 1 THRU 4 | GREAT FALLS, MT 59403-1399 | MAIN ST | not available | 7,350 | | 7,350 |
| Richland | Parish | LAMBERT ORIGINAL TOWNSITE, S31, T22 N, R55 E, BLOCK 002, Lot 009, LOTS 9 10 11 12 AND 13 BLK 2 VACA | LAMBERT, MT 59243 | MAIN ST | not available | 7,350 | | 7,350 |
| Richland | Parish | KENOVER ADD (SIDNEY), S33, T23 N, R59 E, BLOCK 010, Lot 004, LOTS 4-5-6 AND 2 KENOVER B | LAMBERT, MT 59243 | not available | not available | 13,125 | | 13,125 |
| Richland | Parish | KENOVER ADD (SIDNEY), S33, T23 N, R59 E, BLOCK 009, Lot 001, LT 1 BLK 9 KENOVER B | SIDNEY, MT 59270 | not available | not available | | | |
| Richland | Parish | S27, T27 N, R55 E, W25NW | SIDNEY, MT 59270-5034 | not available | not available | 52,250 | 38,240 | 90,490 |
| Richland | Parish | KENOVER ADD (SIDNEY), S33, T23 N, R59 E, BLOCK 007, Lot 001, LOTS1-2,3-4,5, 6 BLK-   74 KENOVER B | SIDNEY, MT 59270-5034 | not available | not available | | | |
| Richland | Parish | NEW CON ORIGINAL ADD (FAIRVIEW), S06, T24 N, R60 E, Lot 004, LTS 14-16 BLK 19 NEWLONS 2 | FAIRVIEW, MT 59221-0494 | 7TH ST SE | not available | | | |
| Richland | Parish | NEW CON SECOND ADD (FAIRVIEW), S06, T24 N, R60 E, BLOCK 019, Lot 005, LTS 9-13 BLK-19 N2L | SIDNEY, MT 59270 | not available | not available | 20,990 | 183,610 | 204,600 |
| Richland | Parish | S00, T28 N, R53 E - NWNL, NWNE, NSE | FAIRVIEW, MT 59221-0494 | not available | not available | | | |
| Roosevelt | Parish | S00, T28 N, R53 E - NESE, N2NE, SENE, NENW | WOLF POINT, MT 59201-0789 | not available | not available | 14,235 | | 14,235 |
| Roosevelt | Parish | S21, T27 N, R53 E, W2SW | WOLF POINT, MT 59201-0789 | not available | not available | 15,457 | | 15,457 |
| Roosevelt | Parish | S27, T27 N, R53 E, W2SW4 | WOLF POINT, MT 59201 | not available | not available | 18,965 | | 18,965 |
| Roosevelt | Parish | S27, T27 N, R53 E, W2SW | WOLF POINT, MT 59201-0789 | not available | not available | 6,120 | | 6,120 |
| Roosevelt | Parish | WOLF POINT ORIGINAL TOWNSITE, S15, T27 N, R47 E, BLOCK 033, Lot 001, LOTS 1 THRU 5 blk 33 | WOLF POINT, MT 59201-0789 | not available | not available | 20,300 | | 20,300 |
| Roosevelt | Parish | WOLF POINT ORIGINAL TOWNSITE, S15, T27 N, R47 E, BLOCK 033, Lot 004, LOTS 4-6 BLK 33 ORIG WP | WOLF POINT, MT 59201 | 525 DAWSON ST | not available | 6,300 | 2,070 | 8,370 |
| Roosevelt | Parish | WOLF POINT ORIGINAL TOWNSITE, S15, T27 N, R47 E, BLOCK 033, Lot 007, LOT 7 BLK 33 ORIG WP | WOLF POINT, MT 59201 | 525 DAWSON ST | not available | 6,300 | 38,900 | 45,210 |
| Roosevelt | Parish | WOLF POINT ORIGINAL TOWNSITE, S15, T27 N, R47 E, BLOCK 033, Lot 008, LOT 8 BLK 33 ORIG WP | WOLF POINT, MT 59201-0789 | 531 DAWSON ST | not available | 6,300 | 73,100 | 79,600 |
| Roosevelt | Parish | POPLAR ORIGINAL TOWNSITE, S10, T27 N, R50 E, BLOCK 008, Lot 008, ALL LT 8 & E2 OF   LT 9 BLK7 | POPLAR, MT 59255-0187 | 500 5TH ST | not available | 4,200 | 158,000 | 162,200 |
| Roosevelt | Parish | POPLAR ORIGINAL TOWNSITE, S10, T27 N, R50 E, BLOCK 007, Lot 008, ALL LT 8 & E2 OF   LT 9 BLK7 | POPLAR, MT 59255 | 216 W G ST | not available | 4,200 | 51,000 | 55,400 |
| Roosevelt | Parish | POPLAR ORIGINAL TOWNSITE, S10, T27 N, R50 E, BLOCK 008, Lot 008, LOTS 6-7 BLK 8 | POPLAR, MT 59255-0187 | not available | not available | 5,040 | | 5,040 |
| Roosevelt | Parish | BROCKTON ORIGINAL TOWNSITE, S30, T28 N, R53 E, BLOCK 008, Lot 003, LTS 1 & 2 BLK 8 ORIG POPLAR | POPLAR, MT 59255-0187 | not available | not available | 5,040 | | 5,040 |
| Roosevelt | Parish | CULBERTSON ORIGINAL COLLECTION(ION), S30, T28 N, R53 E, BLOCK 008, Lot 001, LOTS 1-3 BLK 19 NEWLONS 2 | BROCKTON, MT 59213-9999 | 413 3RD AVE W | not available | 1,050 | | 1,200 |
| Roosevelt | Parish | BRUEGGER ADD (BANVILLE), S34, T28 N, R58 E, BLOCK 000, Lot 007, LT5 7 & 8 BLK 9  BRUEGGERS ADDN | CULBERTSON, MT 59218-9030 | 314 CLINTON AVE | not available | 26,040 | 102,600 | 128,600 |
| Roosevelt | Parish | BRUEGGER ADD (BANVILLE), S34, T28 N, R58 E, BLOCK 000, Lot 007, LT5 7 & 8 BLK 9  BRUEGGERS ADDN | BANVILLE, MT 59212-9999 | 314 CLINTON AVE | not available | 9,400 | 43,900 | 53,300 |
| Roosevelt | Parish | S02, T23 N, R51 E, LOT 2 S2NE 11/D2N7 | BANVILLE, MT 59212 | not available | not available | | | 235,970 |
| Rosebud | Parish | TRACT A 1/4 TRACT 2 S 13A TRACT C 2 1/4A, TRACT D 78A MAP #190276, TRACTS A,B,C ARE IN SEC 3,TR, | LAME DEER, MT 59043-0100 | not available | not available | 5,361 | | 5,361 |
| Rosebud | Parish | S03, T03 S, R44 E, S2NE, LOTS 1 & 2 BEHIND BARN MISSION GROUND | ASHLAND, MT 59003 | not available | not available | 452 | | 452 |
| Rosebud | Parish | S03, T03 S, R44 E, S2NE, LOTS 1 & 2 BEHIND BARN MISSION GROUND | ASHLAND, MT 59003 | not available | not available | | | |
| Rosebud | Parish | S03, T03 S, R44 E, S2NE, LOT 3 & 4 102 W 1ST STREET UNITS A & B | ASHLAND, MT 59003 | 112 W 2ND ST | not available | 88,660 | | 88,660 |
| Rosebud | Parish | S03, T03 S, R44 E, S2NE, LOTS 3 & 4 115 W 2ST MISSION GROUND | ASHLAND, MT 59003 | 102 W 1ST ST | not available | 88,180 | | 88,180 |
| Rosebud | Parish | S03, T03 S, R44 E, S2NE, LOTS 1 & 2 102 W 1ST STREET MISSION GROUND | ASHLAND, MT 59003 | 115 W 1ST ST | not available | 66,970 | | 66,970 |
| Rosebud | Parish | S03, T03 S, R44 E, S2NE, LOTS 1 & 2 104 W 1ST MISSION GROUND | ASHLAND, MT 59003 | 104 W 1ST ST | not available | 87,130 | | 87,130 |
| Rosebud | Parish | S03, T03 S, R44 E, S2NE, LOTS 1 & 2 103 W 1ST MISSION GROUND RENTAL HOUSE | ASHLAND, MT 59003 | 103 W 1ST ST | not available | 158,800 | | 158,800 |
| Rosebud | Parish | S03, T03 S, R44 E, S2NE, LOTS 1 & 2 108 W 1ST MISSION GROUND | ASHLAND, MT 59003 | 108 W 1ST ST | not available | 84,070 | | 84,070 |
| Rosebud | Parish | S03, T03 S, R44 E, S2NE, LOTS 1 & 2 106 W 1ST MISSION GROUND 104 W 4TH | ASHLAND, MT 59003 | 106 W 1ST ST | not available | 79,010 | | 79,010 |
| Rosebud | Parish | S03, T03 S, R44 E, S2NE, LOTS 1 & 2 104 W 4TH MISSION GROUND | ASHLAND, MT 59003 | 103 W 1ST ST | not available | 57,020 | | 57,020 |
| Rosebud | Parish | S03, T03 S, R44 E, S2NE, LOTS 1 & 2 103 W 1ST MISSION GROUND | ASHLAND, MT 59003 | 103 W 1ST ST | not available | 95,720 | | 95,720 |
| Rosebud | Parish | S03, T03 S, R44 E, S2NE, LOTS 1 & 2 108 W 1ST MISSION GROUND | ASHLAND, MT 59003 | 108 W 1ST ST | not available | 143,110 | | 143,110 |
| Rosebud | Parish | SANT JOSEPH VILLAGE 1ST AMEND, S03, T03 S, R44 E, BLOCK 002, Lot 002, ST JOSEPH VILLAGE 22 | ASHLAND, MT 59003 | 104 E 2ND ST | not available | 58,560 | | 58,560 |
| Rosebud | Parish | SANT JOSEPH VILLAGE 1ST AMEND, S03, T03 S, R44 E, BLOCK 002, Lot 003, ST JOSEPH VILLAGE L3,BL2 | ASHLAND, MT 59003 | 104 E 2ND ST | not available | 54,500 | 3,177 | 57,737 |
| Rosebud | Parish | | ASHLAND, MT 59003 | 106 ST JOE ST | not available | 3,098 | | 57,388 |

Exhibit 7

| Property County | Decease/Parish/Other | Legal Description | Primary Owner City, State, Zip | Property Address | Property City, State Zip | Land Value | Building Value | Total Value |
|---|---|---|---|---|---|---|---|---|
| Rosebud | Parish | SANT JOSEPH VILLAGE 1ST AMEND, S03, T03 S, R44 E, BLOCK 002, Lot 004, ST. JOSEPH VILLAGE L4,BL2 | ASHLAND, MT 59003 | 108 ST JOE ST | ASHLAND, MT 59003-0216 | 3,148 | | 60,078 |
| Rosebud | Parish | SANT JOSEPH VILLAGE 1ST AMEND, S03, T03 S, R44 E, BLOCK 002, Lot 005, ST. JOSEPH VILLAGE L5,BL2 | ASHLAND, MT 59003 | 110 ST JOE ST | ASHLAND, MT 59003-0216 | 3,144 | 54,280 | 57,424 |
| Rosebud | Parish | SANT JOSEPH VILLAGE 1ST AMEND, S03, T03 S, R44 E, BLOCK 002, Lot 006, ST. JOSEPH VILLAGE L6,BL2 | ASHLAND, MT 59003 | 112 ST JOE ST | ASHLAND, MT 59003-0216 | 3,217 | 54,280 | 57,497 |
| Rosebud | Parish | SANT JOSEPH VILLAGE 1ST AMEND, S03, T03 S, R44 E, BLOCK 002, Lot 007, ST. JOSEPH VILLAGE L7,BL2 | ASHLAND, MT 59003 | 110 DRUM AVE | ASHLAND, MT 59003-0216 | 3,304 | 55,180 | 58,484 |
| Rosebud | Parish | SANT JOSEPH VILLAGE 1ST AMEND, S03, T03 S, R44 E, BLOCK 002, Lot 008, ST. JOSEPH VILLAGE L8,BL2 | ASHLAND, MT 59003 | 101 FATHER FRANCIS | ASHLAND, MT 59003-0216 | 2,941 | 52,270 | 55,211 |
| Rosebud | Parish | SANT JOSEPH VILLAGE 1ST AMEND, S03, T03 S, R44 E, BLOCK 002, Lot 009, ST. JOSEPH VILLAGE 2.1 | ASHLAND, MT 59003 | 113 ST JOE ST | ASHLAND, MT 59003-0216 | 2,933 | 68,027 | 71,000 |
| Rosebud | Parish | SANT JOSEPH VILLAGE 1ST AMEND, S03, T03 S, R44 E, BLOCK 001, Lot 003, ST. JOSEPH VILLAGE 3.1 | ASHLAND, MT 59003 | 105 ST JOE ST | ASHLAND, MT 59003-0216 | 5,174 | 79,226 | 84,400 |
| Rosebud | Parish | SANT JOSEPH VILLAGE 1ST AMEND, S03, T03 S, R44 E, BLOCK 001, Lot 004, ST. JOSEPH VILLAGE 4.1 | ASHLAND, MT 59003 | 101 ST JOE ST | ASHLAND, MT 59003-0216 | 3,391 | 47,380 | 50,771 |
| Rosebud | Parish | SANT JOSEPH VILLAGE 1ST AMEND, S03, T03 S, R44 E, BLOCK 001, Lot 005, ST. JOSEPH VILLAGE L5,BL1 | ASHLAND, MT 59003 | 101 DRUM AVE | ASHLAND, MT 59003-0216 | 2,739 | 47,360 | 50,099 |
| Rosebud | Parish | SANT JOSEPH VILLAGE 1ST AMEND, S03, T03 S, R44 E, BLOCK 001, Lot 006, ST. JOSEPH VILLAGE L6,BL0 | ASHLAND, MT 59003 | 103 DRUM AVE | ASHLAND, MT 59003-0216 | 3,073 | 59,320 | 62,393 |
| Rosebud | Parish | SANT JOSEPH VILLAGE 1ST AMEND, S03, T03 S, R44 E, BLOCK 009, Lot 001, ST. JOSEPH VILLAGE L1,BL9 | ASHLAND, MT 59003 | 103 DRUM AVE | ASHLAND, MT 59003 | 12,443 | 165,560 | 178,443 |
| Rosebud | Parish | LAME DEER ORIGINAL TOWNSITE, S34, T02 S, R41 E, BLOCK 005, Lot 012, LAME DEER L12,BL5 | LAME DEER, MT 59043 | not available | LAME DEER, MT 59043-0100 | 3,050 | | 7,899 |
| Rosebud | Parish | LAME DEER ORIGINAL TOWNSITE, S34, T02 S, R41 E, BLOCK 005, Lot 013, LAME DEER 5 10/11 S | LAME DEER, MT 59043 | not available | GREAT FALLS, MT 59403-1399 | 5,150 | | 5,150 |
| Rosebud | Parish | LAME DEER ORIGINAL TOWNSITE, S34, T02 S, R41 E, BLOCK 005, Lot 014, LAME DEER 6 10/11 S | LAME DEER, MT 59043 | not available | LAME DEER, MT 59043-0100 | 5,150 | 50,000 | 57,250 |
| Rosebud | Parish | LAME DEER ORIGINAL TOWNSITE, S34, T02 S, R41 E, BLOCK 005, Lot 024, LAME DEER 2,3,4 S | LAME DEER, MT 59043 | not available | LAME DEER, MT 59043-0100 | 5,150 | | 5,150 |
| Rosebud | Parish | S34, T03 N, R41 E, 47448, PARCEL 1C, COLSTRIP COS 47448 1C29 | COLSTRIP, MT 59323-0305 | 320 WATER AVE | COLSTRIP, MT 59323 | 2,667 | | 2,667 |
| Rosebud | Parish | ALEXANDER ADD (FORSYTH), S14, T06 N, R40 E, BLOCK 003, Lot 010, ALEXADD 10/11 3*12,3 | FORSYTH, MT 59327 | 573 N 12TH AVE | FORSYTH, MT 59327-0035 | 20,500 | | 20,500 |
| Rosebud | Parish | ALEXANDER ADD (FORSYTH), S14, T06 N, R40 E, BLOCK 003, Lot 002, ALEX ADD 7,8,9 3 | FORSYTH, MT 59327 | not available | GREAT FALLS, MT 59403-1399 | 22,600 | | 22,600 |
| Rosebud | Parish | ALEXANDER ADD (FORSYTH), S14, T06 N, R40 E, BLOCK 003, Lot 002, ALEX ADD L2- 6,BL3 | FORSYTH, MT 59327 | not available | FORSYTH, MT 59327-0100 | 31,000 | | 31,000 |
| Rosebud | Parish (beneficial interest) | WANADA ORIGINAL TOWNSITE, A05, T07 N, R39 E, BLOCK 009, Lot 001, WANANDA ORG 11 & 12 9 | FORSYTH, MT 59327 | not available | FORSYTH, MT 59327-0100 | 4,100 | | 4,100 |
| Rosebud | Parish | S20, T01 N, R41 E, SW4 | BILLINGS, MT 59101-1255 | not available | BILLINGS, MT 59101-1255 | 7,899 | | 7,899 |
| Sheridan | Parish | HASKINS ADD (MEDICINE LAKE), S25, T32 N, R55 E, BLOCK 008, Lot 007, N 100 FF OF LT8 7-9 | MEDICINE LAKE, MT 59247-9707 | not available | MEDICINE LAKE, MT 59247-9707 | 12,500 | | 12,500 |
| Sheridan | Parish | CITY ADD (MEDICINE LAKE), S25, T32 N, R55 E, BLOCK XXX, Lot A, 100 FT BY 150 FT IN THE SW CORNER | MEDICINE LAKE, MT 59247-9707 | 401 MAIN ST | MEDICINE LAKE, MT 59247-9707 | 7,600 | | 7,600 |
| Sheridan | Parish | CITY ADD (MEDICINE LAKE), S25, T32 N, R55 E, BLOCK XXX, Lot B | MEDICINE LAKE, MT 59247-9707 | not available | MEDICINE LAKE, MT 59247-9707 | 7,600 | | 7,600 |
| Sheridan | Parish | S05, T33 N, R55 E, S2NW4SW4 | PLENTYWOOD, MT 59254-1649 | not available | PLENTYWOOD, MT 59254-1649 | 21,536 | | 21,536 |
| Sheridan | Parish | S06, T33 N, R55 E, E2SE | PLENTYWOOD, MT 59254-1649 | not available | PLENTYWOOD, MT 59254-1649 | 18,703 | | 18,703 |
| Stillwater | Parish | S30, T34 N, R56 E, (CEMETERY) PT NE4SE4SE4W4 CONT. .39 AC | GREAT FALLS, MT 59403-1399 | 5191A HWY 16 S | ANTELOPE, MT 59211 | 8,745 | 245,250 | 253,995 |
| Stillwater | Parish | RIBA SECOND ADD (PLENTYWOOD), S20, T35 N, R55 E, BLOCK 001, Lot 009, LT9 10 AND BLK 4 ORIG | PLENTYWOOD, MT 59254-1649 | 301 N MAIN ST | PLENTYWOOD, MT 59254-1649 | 15,000 | | 15,000 |
| Stillwater | Parish | RIBA SECOND ADD (PLENTYWOOD), S20, T35 N, R55 E, BLOCK 001, Lot 008 | PLENTYWOOD, MT 59254-1649 | 317 N MAIN ST | PLENTYWOOD, MT 59254-1649 | 9,000 | | 9,000 |
| Stillwater | Parish | S01, T04 S, R16 E, TR IN SWNW (PL 184687 I/09 AC) LESS PARCEL | COLUMBUS, MT 59019-0056 | not available | ABSAROKEE, MT 59001 | 55,550 | | 55,550 |
| Stillwater | Parish | NORTONS FIRST ADD (COLUMBUS), S22, T02 S, R20 E, BLOCK 3, Lot 16, LTS 16-18 BLK 3 | COLUMBUS, MT 59019-0056 | 240 E 4TH ST | COLUMBUS, MT 59019 | 53,834 | | 53,834 |
| Stillwater | Parish | NORTONS FIRST ADD (COLUMBUS), S22, T02 S, R20 E, BLOCK 003, Lot 013, LOTS 13 - 15, BLK 3 | COLUMBUS, MT 59019-0056 | 230 N 4TH ST | COLUMBUS, MT 59019 | 37,920 | 75,080 | 113,000 |
| Stillwater | Parish | NORTONS FIRST ADD (COLUMBUS), S22, T02 S, R20 E, BLOCK 003, Lot 011, LOTS 11-12, BLK 3 | COLUMBUS, MT 59019-0056 | MOLT, MT 59057 | COLUMBUS, MT 59019 | 36,800 | | 36,800 |
| Stillwater | Parish | MOORE ADD (COLUMBUS), S22, T02 S, R20 E, BLOCK 04X, Lot 008, LT8 B-C BLK 3 | COLUMBUS, MT 59019-0056 | 182 | COLUMBUS, MT 59019 | 892 | | 892 |
| Stillwater | Parish | S20, T04 N, R02 E, 2 ACRES IN SW4SW4 | COLUMBUS, MT 59019-0056 | not available | COLUMBUS, MT 59019 | 2,950 | | 2,950 |
| Sweet Grass | Parish | MOORE ADD (BIG TIMBER), S14, T01 N, R18 E, BLOCK 04X | BIG TIMBER, MT 59011-0891 | 810 MCLEOD ST | BIG TIMBER, MT 59011 | 54,000 | 521,650 | 575,650 |
| Toole | Parish | DEVON TOWNSITE, S04, T31 N, R02 E, BLOCK 006, Lot 001, LTS 1 & 2 | DEVON, MT 59401 | not available | DEVON, MT 59401 | 7,150 | | 7,150 |
| Treasure | Parish | JACOB BROTHERS ADD (HYSHAM), S00, T00 N, R39 E, BLOCK 021, Lot 013, LTS 13 THROUGH 24 BLK 21 JACOBS | HYSHAM, MT 59038-0042 | 200 ORCHARD ST | HYSHAM, MT 59038 | 5,150 | | 5,150 |
| Treasure | Parish | JACOB BROTHERS ADD (HYSHAM), S00, T00 N, R39 E, BLOCK 021, Lot 001, LTS 1 THRU 12 BLK 21 JACOBS | HYSHAM, MT 59038-0042 | 300 | HYSHAM, MT 59038 | 675 | | 675 |
| Valley | Parish | S33, T27 N, R44 E, ACRES 20, SW4NE4NE4, NW4SE4NE4 (ST JOSEPH CEMETERY) | GREAT FALLS, MT 59403-1399 | 331 MOCCASIN AVE | FRAZER, MT 59225 | 891 | 120,460 | 121,351 |
| Valley | Parish | SCHOOL ADD TO GLASGOW MT, S12, T28 N, R39 E, BLOCK 071, Lot 012 - 015, 18000 SQUARE FEET, LTS 12 | GLASGOW, MT 59230-0471 | not available | GLASGOW, MT 59230 | 27,926 | | 27,926 |
| Valley | Parish | GLASGOW ORIGINAL TOWNSITE, S12, T28 N, R39 E, BLOCK 071, Lot 016 - 022, 27200 SQUARE FEET, LTS 16 | GLASGOW, MT 59230-0471 | 442 3RD AVE N | GLASGOW, MT 59230 | 18,950 | 1,604,400 | 1,619,760 |
| Valley | Parish | GLASGOW ORIGINAL TOWNSITE, S12, T28 N, R39 E, BLOCK 071, Lot 001 - 007, 7800 SQUARE FEET, LTS 1-7 | GLASGOW, MT 59230-0471 | 408 3RD AVE N | GLASGOW, MT 59230 | 18,950 | 306,070 | 326,020 |
| Valley | Parish | GLASGOW ORIGINAL TOWNSITE, S12, T28 N, R39 E, BLOCK 071, Lot 007 - 4550 SQUARE FEET, L.7 W,9 L | GLASGOW, MT 59230-0471 | not available | GLASGOW, MT 59230 | 10,200 | | 10,200 |
| Valley | Parish | SCHOOL ADD TO GLASGOW MT, S12, T28 N, R39 E, BLOCK 071, Lot 008 - 011, 15000 SQUARE FEET, LT8 8-11 | GLASGOW, MT 59230-0471 | 414 3RD AVE N | GLASGOW, MT 59230 | 8,100 | | 8,016 |
| Valley | Parish | SARGENT ADD TO GLASGOW, S12, T28 N, R39 E, BLOCK 071, Lot 014, 6600 SQUARE FEET, L11 W401, 13 | GLASGOW, MT 59230-0471 | not available | GLASGOW, MT 59230 | 14,100 | 16,440 | 30,540 |
| Valley | Parish | RIVER SECOND ADD (HINSDALE), S31, T31 N, R30 E, BLOCK 007, Lot 017, 8400 SQUARE FEET, LT8 17 AND 1 | GLASGOW, MT 59230-0471 | 304 MINNESOTA ST | HINSDALE, MT 59241 | 7,046 | 56,890 | 56,890 |
| Valley | Parish | GLENTANA ORIGINAL TOWNSITE, S29, T38 N, R42 E, BLOCK 007, Lot 011-018, 9750 SQUARE FEET, LT8 11 | GLENTANA, MT 59240-9709 | not available | GLENTANA, MT 59240 | 638 | | 638 |
| Valley | Parish | GLENTANA ORIGINAL TOWNSITE, S29, T38 N, R42 E, BLOCK 007, Lot 017-018, 6500 SQUARE FEET, LT8 1 | GLENTANA, MT 59240-9709 | not available | GLENTANA, MT 59240 | 675 | | 675 |
| Valley | Parish | GLENTANA ORIGINAL TOWNSITE, S29, T38 N, R42 E, BLOCK 007, Lot 001, 3250 SQUARE FEET | GLENTANA, MT 59240-9709 | not available | GLENTANA, MT 59240 | 513 | | 513 |
| Valley | Parish | GLENTANA ORIGINAL TOWNSITE, S29, T38 N, R42 E, BLOCK 007, Lot 012, 3250 SQUARE FEET, LTS 13 | GLENTANA, MT 59240-9709 | not available | GLENTANA, MT 59240 | 838 | | 838 |
| Valley | Parish | GLENTANA ORIGINAL TOWNSITE, S29, T38 N, R42 E, BLOCK 007, Lot 009, 3250 SQUARE FEET | GLENTANA, MT 59240-9709 | not available | GLENTANA, MT 59240 | 513 | | 513 |
| Valley | Parish | GLENTANA ORIGINAL TOWNSITE, S29, T38 N, R42 E, BLOCK 007, Lot 010-011, 6500 SQUARE FEET, LT8 10 AND 1 | GLENTANA, MT 59240-9709 | not available | GLENTANA, MT 59240 | 675 | | 675 |
| Valley | Parish | S02, T12 N, R02 E, 22A PARCEL IN NW4NW4SW4 | GLENTANA, MT 59240-9709 | not available | GLENTANA, MT 59240 | 675 | | 675 |
| Valley | Parish | S33, T12 N, R02 E, NW4SW4 | LAMESTEER RD | not available | LAMESTEER RD | 21,780 | 167,970 | 189,750 |
| Wibaux | Parish | WIBAUX FIRST ADD, S12, T14 N, R58 E, BLOCK 013, Lot 007, LOTS 7 8 9 BLK 13 WIB 13T | WIBAUX, MT 59353-0277 | ORGAN AVE | WIBAUX, MT 59353 | 6,550 | | 6,550 |
| Wibaux | Parish | WIBAUX FIRST ADD, S12, T14 N, R58 E, BLOCK 013, Lot 001, LOTS 1-6 BLK 3 WIBAUX 1ST | WIBAUX, MT 59353-0277 | ORGAN AVE | WIBAUX, MT 59353 | 9,985 | 40,930 | 50,915 |
| Wibaux | Parish | WIBAUX FIRST SUBD, S09, T02 S, R74 E, BLOCK 001, Lot 005, LOTS 1- 20, & 40 FT X 300 FT VAC 8TH ST & VAC ALLEY | WIBAUX, MT 59353-0277 | not available | WIBAUX, MT 59353 | 14,500 | 364,450 | 378,950 |
| Yellowstone | Parish | FOURTH AVE SUBD, S09, T02 S, R74 E, BLOCK 001, Lot 001, LOT8 13,14 B 2 | LAUREL, MT 59044 | 711 E 1ST ST | LAUREL, MT 59044 | 482,713 | 1,537,730 | 2,004,443 |
| Yellowstone | Parish (from Johnk estate) | S01, T02 S, R26 E, UNDIV 16 % INT IN GOVT LTS 11 & 12 USA PATENT # 25-94-0048 T6 24 AC (081 SECT 1 11 T1 GREAT FALLS, MT 59403-1399 | | not available | | 10,428 | | 10,428 |

Exhibit 7

| Property County | Diocese/Parish/Other | Legal Description | Primary Owner City, State, Zip | Property Address | Property City, State, Zip | Land Value | Building Value | Total Value |
|---|---|---|---|---|---|---|---|---|
| Yellowstone | Parish (from Johnk estate) | S05, T02 S, R29 E, ACRES 77.45, LTS 11,12 (10) | GREAT FALLS, MT 59403-1399 | not available | not available | 4,051 | – | 4,051 |
| Yellowstone | Parish (from Johnk estate) | S08, T02 S, R29 E, W2 (10) | GREAT FALLS, MT 59403-1399 | not available | not available | 13,974 | – | 13,974 |
| Yellowstone | Parish (from Johnk estate) | S12, T02 S, R29 E, UNDIV 1/5TH % INT IN THE W2 320 AC (08) | GREAT FALLS, MT 59403-1399 | not available | not available | 32,933 | – | 32,933 |
| Yellowstone | Parish (from Johnk estate) | S17, T02 S, R29 E, ALL (10) | GREAT FALLS, MT 59403-1399 | not available | not available | 78,050 | – | 78,050 |
| Yellowstone | Parish | BILLINGS ORIGINAL TOWNSITE, S03, T01 S, R26 E, BLOCK 54, Lot 1-2 | BILLINGS, MT 59101-1908 | N 31ST ST | BILLINGS, MT 59101 | 250,050 | 8,920 | 259,550 |
| Yellowstone | Parish | BILLINGS ORIGINAL TOWNSITE, S03, T01 S, R26 E, BLOCK 54, Lot 3-5 | BILLINGS, MT 59101-1908 | 206 N 31ST ST | BILLINGS, MT 59101 | 294,635 | 13,320 | 307,955 |
| Yellowstone | Parish | BILLINGS ORIGINAL TOWNSITE, S03, T01 S, R26 E, BLOCK 54, Lot 6-9 | BILLINGS, MT 59101-1908 | 216 N 31ST ST | BILLINGS, MT 59101 | 458,850 | – | 458,850 |
| Yellowstone | Parish | BILLINGS ORIGINAL TOWNSITE, S03, T01 S, R26 E, BLOCK 54, Lot 10-12 | BILLINGS, MT 59101-1908 | 224 N 31ST ST | BILLINGS, MT 59101 | 354,725 | 11,940 | 366,665 |
| Yellowstone | Parish | BILLINGS ORIGINAL TOWNSITE, S03, T01 S, R26 E, BLOCK 54, Lot 13-14 | BILLINGS, MT 59107-1158 | 215 N 32ND ST | BILLINGS, MT 59101 | 1,291,650 | 1,042,800 | 2,334,450 |
| Yellowstone | Billings Catholic Schools | BILLINGS ORIGINAL TOWNSITE, S03, T01 S, R26 E, BLOCK 55, Lot 13-18, & 20' X 150' ADJ VAC STREET RESC | BILLINGS, MT 59101-1158 | 217 N 31ST ST | BILLINGS, MT 59101 | 756,350 | 5,119,900 | 5,876,250 |
| Yellowstone | Parish | YEGEN SECOND ADD, S03, T01 S, R26 E, BLOCK 7, Lot 1-2 | BILLINGS, MT 59101-3713 | 210 S 34TH ST | BILLINGS, MT 59101 | 551,365 | 371,360 | 922,725 |
| Yellowstone | Billings Catholic Schools | YEGEN SECOND ADD, S03, T01 S, R26 E, BLOCK 7, Lot 3-5 | BILLINGS, MT 59101-3713 | 120 S 34TH ST | BILLINGS, MT 59101 | 91,175 | 739,830 | 831,005 |
| Yellowstone | Billings Catholic Schools | YEGEN SECOND ADD, S03, T01 S, R26 E, BLOCK 7, Lot 1-6 | BILLINGS, MT 59105-2725 | 116 S 34TH ST | BILLINGS, MT 59101 | 27,300 | 84,400 | 111,700 |
| Yellowstone | Parish | SUGAR FACTORY ADD, S03, T01 S, R26 E, BLOCK 245, Lot 1, & FRAC LTS 2-10 BLK 245 SUGAR FACTORY ADD | BILLINGS, MT 59101-3713 | S 27TH ST | BILLINGS, MT 59101 | 211,575 | – | 211,575 |
| Yellowstone | Parish | BILLINGS SECOND ADDITION, S03, T01 S, R26 E, BLOCK 245, Lot 13-21 (13) | BILLINGS, MT 59101-3713 | 1001 S 28TH ST | BILLINGS, MT 59101 | 166,425 | – | 166,425 |
| Yellowstone | Parish | BILLINGS ORIGINAL TOWNSITE, S03, T01 S, R26 E, BLOCK 211, Lot 7A, AMD (16) | GREAT FALLS, MT 59403-1399 | 523 S 29TH ST | BILLINGS, MT 59101 | 89,099 | 384,240 | 473,479 |
| Yellowstone | Billings Catholic Schools | BILLINGS ORIGINAL TOWNSITE, S03, T01 S, R26 E, BLOCK 211, Lot 12A, AMD (16) | BILLINGS, MT 59101-3713 | 523 S 29TH ST | BILLINGS, MT 59101 | 27,996 | 148,834 | 176,830 |
| Yellowstone | Billings Catholic Schools | BILLINGS ORIGINAL TOWNSITE, S03, T01 S, R26 E, BLOCK 211, Lot 12A, AMD (16) | BILLINGS, MT 59101-3713 | | BILLINGS, MT 59101 | 27,575 | 100,825 | 128,400 |
| Yellowstone | Billings Catholic Schools | WEST SIDE ADD, S04, T01 S, R26 E, BLOCK 1, Lot 20-21 | BILLINGS, MT 59101-3713 | 41 BROADWATER AVE | BILLINGS, MT 59101 | 37,475 | 90,925 | 128,400 |
| Yellowstone | Billings Catholic Schools | WEST SIDE ADD, S04, T01 S, R26 E, BLOCK 1, Lot 16-19 | BILLINGS, MT 59101-3713 | 39 BROADWATER AVE | BILLINGS, MT 59101 | 620,050 | 5,818,100 | 6,438,150 |
| Yellowstone | Parish | YELLOWSTONE ADD, S04, T01 S, R26 E, BLOCK 2, Lot 1, UNPLATTED TR 1 | BILLINGS, MT 59101-1827 | 3 BROADWATER AVE | BILLINGS, MT 59101 | 228,050 | – | 228,050 |
| Yellowstone | Parish | YELLOWSTONE ADD, S04, T01 S, R26 E, BLOCK 2, Lot 2-12, 19 | BILLINGS, MT 59101-3713 | 521 CUSTER AVE | BILLINGS, MT 59101 | 288,650 | 944,140 | 1,231,030 |
| Yellowstone | Parish | YELLOWSTONE ADD, S04, T01 S, R26 E, BLOCK 2, Lot 13-14 | BILLINGS, MT 59101-3713 | 521 CUSTER AVE | BILLINGS, MT 59101 | 84,351 | 11,140 | 95,491 |
| Yellowstone | Parish | YELLOWSTONE ADD, S04, T01 S, R26 E, BLOCK 2, Lot 4-6, (LESS 50 SQ FT STREET) (06) | BILLINGS, MT 59101-3713 | 502 BROADWATER AV | BILLINGS, MT 59101 | 2,510,610 | 660,440 | 3,171,050 |
| Yellowstone | Parish | S06, T01 S, R26 E, SWSWSE4 (CEMETERY) | BILLINGS, MT 59102-4001 | 717 18TH ST W | BILLINGS, MT 59102 | – | – | – |
| Yellowstone | Parish | JOSEPHINE CROSSING SUB, S20, T01 S, R26 E, BLOCK 3, Lot 16A1, AMD (13) | BILLINGS, MT 59101-3713 | 1741 STONY MEADOW | BILLINGS, MT 59101 | 51,029 | 171,071 | 222,100 |
| Yellowstone | Parish | WYNDHAM WEST PATIO HOMES, S34, T01 N, R26 E, UNIT 1989, 5% COMMON AREA INTEREST, (1/20TH) LOG | GREAT FALLS, MT 59403-1399 | 1989 WESTON DR | BILLINGS, MT 59102 | 27,725 | 222,380 | 250,105 |
| Yellowstone | Parish | FOX SUBD 1ST FILING, S38, T01 N, R26 E, BLOCK 1, Lot 1 | BILLINGS, MT 59102 | 2101 24TH ST W | BILLINGS, MT 59102 | 42,409 | 192,391 | 234,800 |
| Yellowstone | Parish | ST THOMAS SUB, S35, T01 N, R25 E, BLOCK 1, Lot 1 | GREAT FALLS, MT 59403-1399 | 2055 WOODY DR | BILLINGS, MT 59102 | 594,003 | 1,306,980 | 2,300,983 |
| Yellowstone | Billings Catholic Schools | ST THOMAS SUB, S35, T01 N, R25 E, BLOCK 1, Lot 2 | BILLINGS, MT 59102-2725 | 2222 COLTON BLVD | BILLINGS, MT 59102 | 3,019,708 | – | 3,002,029 |
| Yellowstone | Parish | LAKE HILLS SUBD 5TH FILING, S16, T01 N, R26 E, BLOCK 20, Lot 8 | BILLINGS, MT 59105-3725 | 230 TAM O'SHANTER LN | BILLINGS, MT 59105 | 52,895 | 137,520 | 189,000 |
| Yellowstone | Parish | S22, T01 N, R26 E, C O S 2292, PARCEL A | BILLINGS, MT 59105-3725 | 226 WICKS LN | BILLINGS, MT 59105 | 1,177,095 | 2,634,910 | 3,812,005 |
| Yellowstone | Parish | S20, T01 N, R26 E, C O S 1034, PARCEL 1, TR 5 (COS 1304 AMD TRS 1/2 & PORTION OF TR 4 ROMAN CATHOL... | BILLINGS, MT 59105-3725 | 200 S 56TH | BILLINGS, MT 59105 | 343,250 | – | 343,250 |
| Yellowstone | Parish | S01, T03 N, R31 E, C O S 2926, PARCEL 1 | GREAT FALLS, MT 59403-1399 | Rural | BALLANTINE, MT 59006 | 13,534 | – | 13,534 |
| Yellowstone | Parish | BROADVIEW ORIGINAL TOWNSITE, S16, T04 N, R23 E, BLOCK 13, Lot 7 - 12 | CUSTER, MT 59024 | 16538 IOWA AVE | CUSTER, MT 59015 | 21,300 | – | 21,300 |
| Yellowstone | Parish | CUSTER ORIGINAL TOWNSITE, S01, T04 N, R33 E, BLOCK 23, Lot 13-16 | CUSTER, MT 59024 | 212 4TH AVE | BROADVIEW, MT 59999 | 17,580 | 248,100 | 265,040 |
| | | | | | | 21,625,898 | 49,296,724 | 70,922,622 |

**EXHIBIT B**

*file copy*
*5-31-78*

## TRUST AGREEMENT

## EUGENE V. GERGEN TRUST

AGREEMENT dated May 31st, 1978, between EUGENE V.
GERGEN of P. O. Box 2707, Great Falls, Montana 59403, herein
called Grantor, and EUGENE V. GERGEN of P. O. Box 2707, Great
Falls, Montana 59403, herein called Trustee.

1.  <u>Trust Property</u>. Grantor has, at the time of
the execution of this instrument, assigned and transferred
to the Trustee the property described on the schedule attached
hereto as part hereof, to be held, managed, invested and
reinvested in trust on the terms hereinafter set forth.

2.  <u>Additional Property</u>. So long as this agreement
remains unrevoked, either the Grantor or any other person or
entity may add additional property to the trust herein
created, by inter vivos or testamentary transfer, or otherwise,
including the designation of the Trustee as a life insurance
or employee benefit plan beneficiary, and, if so added, such
property and the proceeds thereof shall be covered by the
provisions hereof, the same as if originally included hereunder.

3.  <u>Rights Reserved by Grantor</u>. Grantor, by
written instrument filed with the Trustee during Grantor's
lifetime, may alter, amend or revoke this trust at any time,
in whole or in part. In case of revocation, all of the
trust property, or that part thereof as to which this agreement
may be revoked, shall be delivered by the Trustee to the
Grantor or in accordance with Grantor's written directions.

4.  <u>Duties of Trustee During Grantor's Lifetime</u>.
During Grantor's lifetime, the Trustee shall accumulate or
distribute the net income of the trust as Grantor may from
time to time direct in writing. Until a written direction
from Grantor to the contrary, the entire net income of the
trust shall be distributed to Grantor in quarterly installments
or oftener.

5.    <u>Distributions After Grantor's Incapacity</u>.  Should
Grantor be determined to be incapacitated, then notwithstanding
any prior direction valid when given, or the absence of any
valid direction, the Trustee shall distribute to, or for the
use and benefit of Grantor, or expend directly for his benefit,
such portions of both income and principal as the Trustee
deems appropriate to provide for his care and comfort and
maintenance in health, considering his age, needs and physical
and mental condition.

6.    <u>Determination of Grantor's Incapacity</u>.  The
powers reserved by Grantor shall be exercised by Grantor so
long as Grantor remains capable to act.  Grantor shall be
considered as incapacitated if Grantor is unable to manage
Grantor's property and affairs effectively for reasons such
as mental illness, mental deficiency, physical illness or
disability, advanced age, chronic use of drugs, chronic
intoxication, or other causes.  The determination of incapacity
shall be made either by a court of competent jurisdiction,
or by the Trustee, if the Trustee's determination is confirmed
in writing by a physician duly licensed to practice in the
state of Grantor's domicile who has within the period of 30
days preceding or succeeding the determination attended and
examined Grantor.  After such a determination, Grantor's
directions and any attempted exercise of any reserved power
shall be ineffective for all purposes, until in like manner
it is determined that Grantor is capable to act.

7.    <u>Powers of Trustee</u>.  So long as Grantor lives
and remains competent to act, the Trustee shall comply with
any written direction of Grantor with respect to the trust
property, but absent any contrary written direction from
Grantor if Grantor is living, or if Grantor becomes incompetent
to act, or if Grantor dies, then with respect to property held
hereunder the Trustee shall have all of the powers granted
to Trustees by the Montana Trustees' Powers Act, as that act
now exists.  This paragraph shall in no way be construed to

limit powers which may have been given to a Trustee by any specific provision of this Trust.

8. __Division of Trust Property__. Upon Grantor's death, the Trustee shall make the following distributions:

(a) Unto RAY C. PENCE and ABBEY F. PENCE, or the survivor thereof, of 1231 Floweree Street, Helena, Montana, any of Grantor's watches, guns and hunting equipment which Grantor may have conveyed to the said Eugene V. Gergen Trust during his lifetime, or which have been devised to the Trustee of the said Eugene V. Gergen Trust by Grantor's will. Should both the said RAY C. PENCE and ABBEY F. PENCE fail to survive Grantor, then the Trustee shall distribute such personal property to their children, DEBRA PENCE, BRETT PENCE and CHARLES PENCE, if living, or should any of such children fail to survive, then unto his or her lineal descendants, per stirpes.

(b) Unto the said DEBRA PENCE, BRETT PENCE and CHARLES PENCE each the sum of Five Thousand Dollars ($5,000.00). It is Grantor's wish that such monies be used by each for the purposes of his or her education. Should any of such persons fail to survive Grantor, then such sum shall be distributed unto his or her lineal descendants, per stirpes.

(c) Unto the BILLINGS AREA CATHOLIC EDUCATION TRUST, a Montana corporation, outright, Grantor's Seltzer oil painting of Charles M. Russell on his horse, "Monte," and Grantor's Seltzer water color depicting a mother cow and calf.

(d) Unto Grantor's sister, MRS. VALERIA FREDRIKSON, if living, for her life, the right to the full use and enjoyment of Grantor's Seltzer water color depicting horses drinking, with remainder over upon her death unto the said BILLINGS AREA CATHOLIC EDUCATION TRUST. Should Grantor's said sister fail to survive Grantor, then the Trustee shall distribute such legal life estate unto her husband, DONALD FREDRIKSON, if living, for his life, with remainder over at his death unto the said BILLINGS AREA CATHOLIC EDUCATION TRUST, and if both Grantor's said sister and brother-in-law fail to survive him, then the Trustee shall distribute said water color, outright, unto the said BILLINGS AREA CATHOLIC EDUCATION TRUST.

(e) Unto Grantor's sister, MRS. VALERIA FREDRIKSON, if living, and if not, then unto her husband, DONALD FREDRIKSON, if living, and if not, then unto their daughter, MRS. ABBEY F. PENCE, if living, and if not, then unto her lineal descendants, per stirpes, all other photographs, paintings and tangible personal property not hereinabove distributed whether transferred unto the said Eugene V. Gergen Trust during the Grantor's lifetime, or devised to said Trust by Grantor's will.

(f) Unto the ROMAN CATHOLIC BISHOP OF GREAT FALLS, MONTANA, a corporation sole, the sum of One Thousand Dollars ($1,000.00), it being Grantor's wish that such funds be used for masses to be said in the poor

parishes of the Diocese.

(g)  Unto the said Trustee to be retained in trust, all property, both real and personal, of whatever kind and wherever situate, not otherwise distributed by the Trustee, above, then comprising the Trust corpus, whether conveyed to the said Eugene V. Gergen Trust during the Grantor's lifetime, or devised to the Trustee under the terms of Grantor's will, to be held in a separate trust in accordance with the provisions of ¶9, below.

9.  Residuary Trust.  The residue of the trust estate, as above defined, shall be retained by Grantor's Trustee, to be held in a separate residuary trust, which Grantor hereby creates under the following terms:

(a)  Said Trustee shall distribute all income, at least semi-annually and, in addition, such portions of principal as the Trustee, in its sole discretion deems advisable, unto the ROMAN CATHOLIC BISHOP OF GREAT FALLS, MONTANA, a Montana corporation sole.  It is the Grantor's wish that such distributions be used by the Clerical Benefit Association of the Diocese, or such other entity within the Diocese of Great Falls, which may be a successor entity designated to carry out the purposes of said Association to provide additional retirement benefits to the members of the clergy within the Diocese of Great Falls who elect not to retire until age 65 or thereafter.  Should the Diocese of Great Falls be divided, then those members of the clergy who formerly were within the Diocese of Great Falls, as the same existed prior to division, but no longer are, shall continue to be members of the class of distributees of said Association, or its successor.

(b)  The Trust shall terminate upon the twentieth anniversary date of Grantor's death, whereupon all trust property shall be distributed outright unto the ROMAN CATHOLIC BISHOP OF GREAT FALLS, MONTANA. Notwithstanding the absolute nature of this devise, it is my wish that such property and the income therefrom be divided by the ROMAN CATHOLIC BISHOP OF GREAT FALLS, MONTANA into four equal shares, three of which shall be administered as separate special funds for the benefit of the conduct of an affiliated school or schools by each of the following parishes:  HOLY ROSARY PARISH, Billings, Montana, OUR LADY OF LOURDES PARISH, Great Falls, Montana, and HOLY FAMILY PARISH, Great Falls, Montana.  Should a given parish not then be conducting an affiliated school, its share of such special funds shall be added to the special fund(s) for the other parish or parishes involved in providing a school(s).  If none of said parishes have an affiliated school(s), then all property and the income therefrom shall be distributed unto the BILLINGS AREA CATHOLIC EDUCATION TRUST, below.

A fourth share shall be distributed outright unto the BILLINGS AREA CATHOLIC EDUCATION TRUST to be administered in accordance with the uses and purposes of said organization if the same is then qualified as an organization described in §170(c) and §2055 of the Internal Revenue Code of 1954.  If such organi-

--4--

zation is not then in existence or has not so quali-
fied, then its share shall be added to the special
funds for the above-named parish or parishes.

10. <u>Non-Assignability Provision</u>. Except as otherwise speci-
fically permitted herein, no beneficial interest under any trust,
whether in income or principal, shall be subject to assignment,
alienation, pledge, attachment or claims of creditors, nor shall
any beneficiary have the power to encumber such interest, nor
shall such interest, while in the possession of the Trustee,
be liable for or subject to the debts, contracts, obligations,
liabilities, or torts of any beneficiary.

11. <u>Payment of Death Taxes and Other Items</u>. Notwithstand-
ing any prior provision, the Trustee is authorized and directed
to pay to Grantor's personal representative, out of property
held under this agreement, such amounts as Grantor's personal
representative may request for payment of debts, claims and
funeral expenses, expenses of administration of Grantor's gross
estate, and for payment of estate, inheritance or succession
taxes, including interest thereon and additions thereto, payable
on account of Grantor's death, whether attributable to property
passing under this agreement or otherwise, and no beneficiary
of any trust herein established, nor any transferee or distributee
of property in Grantor's gross estate, whether passing under
or outside this agreement shall be obligated to reimburse any
trust or the beneficiaries thereof for any part of the amounts
so paid. All of such amounts shall be paid solely out of the
property otherwise passing under ¶9 of this agreement. The Trustee
may pay such items directly, or may remit the funds necessary
to such personal representative. Written statements by the
personal representative of the sums to be paid hereunder shall
be sufficient evidence of their amount and propriety for the pro-
tection of the Trustee, and the Trustee shall be under no duty
to see to the application of any such payments.

12. <u>Successor Trustee</u>. After Grantor's death, or after
Grantor's incompetency, if the Trustee at any time resigns, or
is unable or refuses to act, ANTHONY GERHARZ, JR., whose address

-5-

is 410 North Broadway, Billings, Montana, shall become successor trustee, effective as of the date written notice by the successor is given to all of the then income beneficiaries.  If the said ANTHONY GERHARZ, JR. declines to act or resigns, then RALPH STUDER, JR. and LARRY CHOUINARD, both of Billings, Montana, shall be co-successor trustees.  Should either the said RALPH STUDER, JR. or LARRY CHOUINARD decline to act or resign, then I appoint the other and FIRST TRUST COMPANY OF MONTANA as co-successor trustees, and if both the said RALPH STUDER, JR. and LARRY CHOUINARD decline to act or resign, then I appoint FIRST TRUST COMPANY OF MONTANA as the sole trustee, and should it decline to act or resign, then a successor trustee, which need not be domiciled in the State of Montana, shall be selected by a majority of the income beneficiaries.  If such majority names no successor, the resigning trustee or any tenant or remainderman of any trust hereunder may apply to any court of competent jurisdiction for the appointment of a successor trustee, with such notice of the application to the tenants and remaindermen of the trusts established hereunder as the court to whom the application is made may deem appropriate.

13.  Accounting, Compensation and Bond.  The Trustee shall maintain accurate accounts and records and shall render at least annual statements to the current income beneficiary or beneficiaries showing the condition of the trust and receipts and disbursements or principal and income.  The Trustee shall be entitled to reasonable compensation for services rendered as Trustee, and to reimbursement for reasonable expenditures incurred in the execution of any trust, including compensation paid for services of accountants and attorneys.  No bond or other security shall be required of the Trustee.

14.  Headings.  The headings of the paragraphs herein are for convenience only and shall not affect the interpretation of this agreement.

15.  Situs.  This trust is established and accepted by the Trustee under the laws of the State of Montana, and all questions concerning its validity, construction, and administration shall

be determined under such laws.

IN WITNESS WHEREOF, the parties have executed this agreement.

_____
EUGENE V. GERGEN, Individually

"Grantor"

_____
EUGENE V. GERGEN, as Trustee

"Trustee"

Witness to the signatures of
Eugene V. Gern, both as an
individual and as Trustee:

_____
JOHN M. DIETRICH

-7-

MONSIGNOR EUGENE V. GERGEN

SCHEDULE OF PROPERTY ASSIGNED AND
TRANSFERRED TO EUGENE V. GERGEN TRUST
MAY 31, 1978

| BONDS | | BASIS |
|---|---|---|
| 32. | $1,000 BILLINGS FUNERAL SERVICE MORTGAGE BOND, 6% INTEREST DUE NOVEMBER 1, 1978, CERTIFICATE #155 | $   1,000.00 |
| 33. | $25,000 YELLOWSTONE COUNTY INDUSTRIAL DEVELOPMENT BOND, 7½% INTEREST DUE SEPTEMBER 1, 1991 | 25,396.79 |
| | TOTAL CORPORATE STOCKS AND BONDS | $166,576.81 |

OIL PROPERTIES

SUPPLEMENTAL LIST TO BE ATTACHED WHEN OIL BROKER
COMPLETES SCHEDULE OF OIL PROPERTIES.                    $ 11,541.02

**EXHIBIT C**

**COMPLAINT FOR DECLARATORY**
**RELIEF REGARDING PROPERTY**
**OF THE ESTATE**

# CENTRAL ADMINISTRATIVE OFFICE OF THE ROMAN CATHOLIC BISHOP OF GREAT FALLS, MONTANA, A CORPORATION SOLE

## GREAT FALLS, MONTANA

### FINANCIAL STATEMENTS
AS OF
### JUNE 30, 2016 and 2015

Our reports are issued with the understanding that, without our consent, they may be reproduced only in their entirety.  Should it be desired to issue or publish a condensation or a portion of this report and our name is to be used in connection therewith, our approval must first be secured.

*Douglas Wilson & Company, P.C.*

TABLE OF CONTENTS

Page

INDEPENDENT AUDITOR'S REPORT.............................................................................3-4

STATEMENTS OF FINANCIAL POSITION AS OF JUNE 30, 2016 and 2015.....................................5

STATEMENT OF ACTIVITIES FOR THE YEAR ENDED JUNE 30, 2016 ...........................................6

STATEMENT OF ACTIVITIES FOR THE YEAR ENDED JUNE 30, 2015 ...........................................7

STATEMENTS OF CASH FLOWS FOR THE YEARS ENDED JUNE 30, 2016 AND 2015 ...............8

NOTES TO FINANCIAL STATEMENTS........................................................................ 9-21



*Certified Public Accountants*
Since 1913

*Douglas* **WILSON**
*and* Company, PC

Randal J. Boysun, CPA
Gerard K. Schmitz, CPA
Myra L. Bakke, CPA

Douglas N. Wilson, CPA
Bruce H. Gaare, CPA

Most Reverend Michael Warfel
Central Administrative Office of the Roman Catholic Bishop of
  Great Falls, Montana, a Corporation Sole
Great Falls, Montana

## INDEPENDENT AUDITOR'S REPORT

We have audited the accompanying financial statements of the Central Administrative Office of the Roman Catholic Bishop of Great Falls, Montana, a Corporation Sole (the Chancery), which comprise the statements of financial position as of June 30, 2016 and 2015, and the related statements of activities and cash flows for the years then ended, and the related notes to the financial statements.

**Management's Responsibility for the Financial Statements**

Management is responsible for the preparation and fair presentation of these financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

**Auditor's Responsibility**

Our responsibility is to express an opinion on these financial statements based on our audits. We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the entity's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

3

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

**Opinion**

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of the Central Administrative Office of the Roman Catholic Bishop of Great Falls, Montana, a Corporation Sole, as of June 30, 2016 and 2015, and the changes in its net assets and its cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America.

*Douglas Wilson & Company, P.C.*

Great Falls, Montana
April 10, 2017

4

**CENTRAL ADMINISTRATIVE OFFICE OF DIOCESE OF GREAT FALLS-BILLINGS**

**GREAT FALLS, MONTANA**

**STATEMENTS OF FINANCIAL POSITION**
**AS OF JUNE 30, 2016 AND 2015**

| ASSETS | 6/30/16 | As Restated 6/30/15 |
|---|---|---|
| Cash and Cash Equivalents | $ 1,655,151 | $ 2,063,696 |
| Investments | 18,397,235 | 18,321,968 |
| Accounts Receivable | | |
|   Parishes and Institutions | 131,943 | 201,918 |
|   Assessments (Net) | 1,578,852 | 1,429,790 |
|   Other | 91,701 | 70,179 |
| Deposits and Other Prepaid Expenses | 5,319 | 50,183 |
| Loans and Notes Receivable | | |
|   Parishes and Institutions | 4,814,821 | 5,000,755 |
|   Other | 95,558 | 97,998 |
| Catholic Foundation of Eastern Montana - Restricted | 1,862,866 | 1,898,437 |
| Property and Equipment (net of accumulated depreciation) | 7,557,195 | 6,958,521 |
|     Total Assets | $ 36,190,641 | $ 36,093,445 |

**LIABILITIES AND NET ASSETS**

| | 6/30/16 | As Restated 6/30/15 |
|---|---|---|
| Liabilities: | | |
|   Accounts Payable and Accrued Liabilities | $ 533,168 | $ 530,506 |
|   Deposits Payable to Parishes and Institutions | 15,774,735 | 16,195,195 |
|   Interest Payable to Parishes and Institutions | 291,650 | 278,097 |
|   Held for Parishes and Institutions | 1,415,178 | 1,401,507 |
|   Other Liabilities | 65,320 | 44,394 |
|   Postretirement Benefit Obligation | 14,455,996 | 12,776,832 |
|     Total Liabilities | 32,536,047 | 31,226,531 |
| Net Assets: | | |
|   Unrestricted | (2,254,126) | (1,659,927) |
|   Temporarily Restricted | 2,279,133 | 3,003,312 |
|   Permanently Restricted | 3,629,587 | 3,523,529 |
|     Total Net Assets | 3,654,594 | 4,866,914 |
|     Total Liabilities and Net Assets | $ 36,190,641 | $ 36,093,445 |

See accompanying notes to the financial statements.

**CENTRAL ADMINISTRATIVE OFFICE OF DIOCESE OF GREAT FALLS-BILLINGS**

**GREAT FALLS, MONTANA**

**STATEMENT OF ACTIVITIES**
**FOR THE YEAR ENDED JUNE 30, 2016**

| | Unrestricted | Temporarily Restricted | Permanently Restricted | 6/30/16 |
|---|---|---|---|---|
| **Revenues:** | | | | |
| Gifts, Bequests, Grants and Assessments | $ 1,408,276 | $ 1,815,246 | $ 12,400 | $ 3,235,922 |
| Insurance | 284,603 | - | - | 284,603 |
| Investment Income | 677,171 | - | - | 677,171 |
| Rents and Leases Income | 145,272 | - | - | 145,272 |
| Other Revenue | 855,504 | - | - | 855,504 |
| Fees for Services | 1,119,189 | - | - | 1,119,189 |
| Change in Beneficial Interest in Catholic Foundation of Eastern Montana | (34,906) | (94,772) | 93,658 | (36,020) |
| Net Assets Released from Restrictions | 2,444,653 | (2,444,653) | - | - |
| Total Revenues | 6,899,762 | (724,179) | 106,058 | 6,281,641 |
| **Expenses:** | | | | |
| Compensation and Benefits | 4,427,293 | - | - | 4,427,293 |
| Property Costs and Depreciation | 785,552 | - | - | 785,552 |
| Office Expenses | 157,328 | - | - | 157,328 |
| Professional Fees | 423,249 | - | - | 423,249 |
| Interest Paid to Parishes and Organizations | 296,020 | - | - | 296,020 |
| Insurance | 129,578 | - | - | 129,578 |
| Other Operating Expenses | 774,511 | - | - | 774,511 |
| Seminarian Expenses | 110,922 | - | - | 110,922 |
| Exchange Program Expenses | 170,549 | - | - | 170,549 |
| Auto, Travel and Meeting Expenses | 218,959 | - | - | 218,959 |
| Total Expenses | 7,493,961 | - | - | 7,493,961 |
| Change in Net Assets | (594,199) | (724,179) | 106,058 | (1,212,320) |
| Net Assets at Beginning of Year | (1,659,927) | 3,003,312 | 3,523,529 | 4,866,914 |
| Net Assets at End of Year | $ (2,254,126) | $ 2,279,133 | $ 3,629,587 | $ 3,654,594 |

See accompanying notes to the financial statements.

6

**CENTRAL ADMINISTRATIVE OFFICE OF DIOCESE OF GREAT FALLS-BILLINGS**

**GREAT FALLS, MONTANA**

**STATEMENT OF ACTIVITIES**
**FOR THE YEAR ENDED JUNE 30, 2015**

| | As Restated Unrestricted | As Restated Temporarily Restricted | As Restated Permanently Restricted | As Restated 6/30/15 |
|---|---|---|---|---|
| **Revenues:** | | | | |
| Gifts, Bequests, Grants and Assessments | $ 1,998,394 | $ 2,407,103 | $ 12,525 | $ 4,418,022 |
| Insurance | 1,417,094 | - | - | 1,417,094 |
| Investment Income | 1,023,435 | - | - | 1,023,435 |
| Rents and Leases Income | 151,632 | - | - | 151,632 |
| Other Revenue | 1,270,068 | - | - | 1,270,068 |
| Fees for Services | 945,884 | - | - | 945,884 |
| Change in Beneficial Interest in Catholic Foundation of Eastern Montana | 38,488 | 102,321 | 49,152 | 189,961 |
| Net Assets Released from Restrictions | 1,632,022 | (1,632,022) | - | - |
| Total Revenues | 8,477,017 | 877,402 | 61,677 | 9,416,096 |
| **Expenses:** | | | | |
| Compensation and Benefits | 6,859,040 | - | - | 6,859,040 |
| Property Costs and Depreciation | 854,818 | - | - | 854,818 |
| Office Expenses | 243,262 | - | - | 243,262 |
| Professional Fees | 404,438 | - | - | 404,438 |
| Interest Paid to Parishes and Organizations | 281,200 | - | - | 281,200 |
| Insurance | 247,939 | - | - | 247,939 |
| Other Operating Expenses | 1,376,510 | - | - | 1,376,510 |
| Seminarian Expenses | 184,046 | - | - | 184,046 |
| Exchange Program Expenses | 87,697 | - | - | 87,697 |
| Auto, Travel and Meeting Expenses | 199,508 | - | - | 199,508 |
| Total Expenses | 10,738,458 | - | - | 10,738,458 |
| Change in Net Assets | (2,261,441) | 877,402 | 61,677 | (1,322,362) |
| Net Assets at Beginning of Year, as previously stated | 1,264,863 | 2,584,852 | 4,617,032 | 8,466,747 |
| Restatement | (663,349) | (458,942) | (1,155,180) | (2,277,471) |
| Net Assets at Beginning of Year, as restated | 601,514 | 2,125,910 | 3,461,852 | 6,189,276 |
| Net Assets at End of Year | $ (1,659,927) | $ 3,003,312 | $ 3,523,529 | $ 4,866,914 |

**CENTRAL ADMINISTRATIVE OFFICE OF DIOCESE OF GREAT FALLS-BILLINGS**

**GREAT FALLS, MONTANA**

**STATEMENTS OF CASH FLOWS**
**FOR THE YEARS ENDED JUNE 30, 2016 and 2015**

|  | 6/30/16 | As Restated 6/30/15 |
|---|---|---|
| Cash Flows from Operating Activities: | | |
| Change in Net Assets | $ (1,212,320) | $ (1,322,362) |
| Adjustments to Reconcile Change in Net Assets to | | |
| Net Cash Provided by Operating Activities: | | |
| Bad Debts | 4,945 | (40,060) |
| Net Change in Catholic Foundation of Eastern Montana | 35,571 | (191,086) |
| Depreciation | 343,802 | 387,005 |
| (Gain) Loss on Sale of Property and Equipment | (225,603) | (271,450) |
| Contributions Restricted for Long-Term Purposes | (12,400) | (12,525) |
| Realized and Unrealized Loss on Investments | (271,631) | (442,352) |
| (Increase) Decrease in Operating Assets: | | |
| Accounts Receivable from Parishes and Institutions | 69,975 | 158,888 |
| Assessments (Net) | (161,083) | (270,561) |
| Other Receivables | (14,446) | (11,497) |
| Deposits and Other Prepaid Expenses | 44,864 | (21,677) |
| Increase (Decrease) in Operating Liabilities: | | |
| Accounts Payable and Accrued Liabilities | (80,856) | 52,682 |
| Interest Payable to Parishes and Institutions | 13,553 | 139,751 |
| Postretirement Benefit Obligation | 1,679,164 | 2,485,574 |
| Other Liabilities | 104,444 | 4,063 |
| Net Cash Provided (Used) by Operating Activities | 317,979 | 644,393 |
| | | |
| Cash Flows from Investing Activities: | | |
| Sale/Redemption of Investments | 3,910,682 | 4,837,965 |
| Purchases of Investments | (3,714,318) | (4,367,867) |
| Purchases of Property and Equipment | (1,102,973) | (238,824) |
| Proceeds from Sales of Property and Equipment | 386,100 | 480,321 |
| New Loans to Parishes and Institutions | (43,529) | (66,891) |
| Payments Received on Loans to Parishes and Institutions | 229,463 | 390,167 |
| Payments Received on Loans to Others | 2,440 | 45 |
| Net Cash Provided (Used) by Investing Activities | (332,135) | 1,034,916 |
| | | |
| Cash Flows from Financing Activities: | | |
| Proceeds from Contributions Restricted for Long-Term Purposes | 12,400 | 12,525 |
| New Deposits from Parishes and Institutions | 1,630,806 | 1,544,514 |
| Deposits Returned to Parishes and Institutions | (2,051,266) | (1,665,886) |
| Net Change in Funds Held for Parishes and Institutions | 13,671 | (333,435) |
| Net Cash Provided (Used) by Financing Activities | (394,389) | (442,282) |
| | | |
| Net Increase (Decrease) in Cash | (408,545) | 1,237,027 |
| Cash and Cash Equivalents - Beginning of Year | 2,063,696 | 826,669 |
| Cash and Cash Equivalents - End of Year | $ 1,655,151 | $ 2,063,696 |
| | | |
| Interest Paid: | | |
| Deposits in Deposit and Loan Fund | $ 282,467 | $ 141,449 |

See accompanying notes to the financial statements.

8

**CENTRAL ADMINISTRATIVE OFFICE OF DIOCESE OF GREAT FALLS-BILLINGS**

**GREAT FALLS, MONTANA**

**NOTES TO THE FINANCIAL STATEMENTS**
**JUNE 30, 2016**

## NOTE 1:   ORGANIZATION AND NATURE OF ACTIVITIES:

According to the Code of Canon Law of the Roman Catholic Church, a diocese is "a portion of the people of God which is entrusted for pastoral care to a bishop" (Canon 369). A diocese is normally territorial and is divided into distinct parts called parishes (see Canon 374).

In 1884, Pope Leo XIII created the Diocese of Helena, with boundaries being the same as the present State of Montana. In 1904, the Diocese of Helena was split and the Diocese of Great Falls (now Great Falls-Billings) was established. The Diocese of Great Falls-Billings includes roughly the eastern two-thirds of the State of Montana. The Diocese extends credit to the parishes and schools located within this geographic region. As such, the Diocese's receivables are mainly subject to the economic conditions of this geographic region.

In civil law, the Diocese of Great Falls-Billings is incorporated as the Roman Catholic Bishop of Great Falls, Montana, a Corporation Sole, (the Corporation Sole). The Corporation Sole operates the Central Administrative Office of the Diocese of Great Falls-Billings (the Chancery). Other operating divisions of the Corporation Sole include some 51 parishes, many with missions attached to them, school systems, and various other Catholic programs within the Diocese.

The accompanying financial statements include only the Chancery and those funds over which the Chancery maintains direct operational control, which include Mount Olivet Cemetery, Holy Cross Cemetery and Great Falls Central Catholic High School. Such statements do not include any assets or liabilities of the other operating divisions of the Corporation Sole as described above. In addition, the accompanying financial statements do not include, or pertain to, separate and independent corporate entities affiliated with the Corporation Sole that are located within the Diocese of Great Falls-Billings such as: The Catholic Foundation of Eastern Montana.

A significant portion of the Chancery's revenues is derived from assessments obtained from and fees for services provided to parishes, schools and other Diocesan institutions. The Chancery also administers the Diocesan insurance program.

The Chancery administers a Deposit and Loan Fund for its investments and on behalf of parishes. The funds are held in accounts invested with fund managers. Ownership by parish of the Deposit and Loan Fund is based on the amount held on account.

## NOTE 2:   SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES:

The accounting policies of the Chancery conform to accounting principles generally accepted in the United States of America (GAAP) applicable to not-for-profit entities. A summary of the significant accounting policies consistently applied in the preparation of the accompanying financial statements follows:

**Basis of Presentation -** The Chancery reports information regarding its financial position and activities according to three classes of net assets that are based upon the existence or absence of donor-imposed restrictions as follows:

**Unrestricted Net Assets -** Includes net assets of the Chancery that are not subject to donor-imposed restrictions.

**Temporarily Restricted Net Assets -** Includes net assets of the Chancery received with donor stipulations that limit the use of the net assets. Donor restrictions are stipulated by either a time restriction or a purpose restriction. Upon expiration of a time restriction or completion of a purpose restriction, temporarily restricted net assets are reclassified to unrestricted net assets and reported in the statement of activities as net assets released from restriction. Temporarily restricted amounts received and used during the year flow through the statement of activities as unrestricted.

**Permanently Restricted Net Assets -** Includes net assets whose use has been restricted for investment in perpetuity as donor-restricted endowments. The income from endowments is available for either general operations or specific programs as specified by the donor.

**Method of Accounting -** The financial statements have been prepared on the accrual basis of accounting.

**Use of Estimates -** The preparation of financial statements in conformity with GAAP requires management to make estimates and assumptions that affect the reported amounts of assets, liabilities, and disclosures at the date of the financial statements, as well as revenues and expenses during the period. Accordingly, actual results could differ from those estimates.

**Cash and Cash Equivalents -** For the purposes of the financial statements, the Chancery considers all highly liquid accounts with an original maturity date of three months or less as cash equivalents, except for cash and cash equivalents held by investment custodians.

**Concentration of Credit Risk -** Financial instruments that potentially subject the Chancery to concentrations of credit risk consist principally of cash and cash equivalents. Such balances with any one institution may, at times, be in excess of the Federal Deposit Insurance Corporation insured limit of $250,000. At June 30, 2016, the Chancery's uninsured cash balances total $1,251,949. Risks associated with cash and cash equivalents are mitigated by banking with credit worthy institutions. The Chancery has not experienced any losses in such accounts and believes it is not exposed to any significant risk.

**Investments -** Investments in marketable securities with readily determinable fair values and all investments in debt securities are reported at their fair value in the statement of financial position, with current period recognition of increases or decreases in fair value shown in the statement of activities. Investments also include cash and cash equivalents held by investment custodians. Investment income recorded on the statement of activities includes interest and dividend income, as well as realized and unrealized gains and losses.

**Fair Value Measurements -** The Chancery follows the fair value measurement standards which define fair value as the exchange price that would be received for an asset or paid to transfer a liability in the principal or most advantageous market for the assets or liabilities in an orderly transaction between market participants on the measurement date. Subsequent changes in fair value of these financial assets and liabilities are recognized in the change in net assets when they occur.

The Chancery determines the fair value of its financial assets and liabilities in accordance with the GAAP hierarchy for measuring fair value. The hierarchy maximizes the use of observable inputs and minimizes the use of unobservable inputs by requiring that the most observable inputs be used when available. Observable inputs are inputs that market participants would use in pricing the asset or liability developed based on market data obtained from sources independent of the Chancery. Unobservable inputs are inputs that reflect the Chancery's assumptions about what market participants would use in pricing the asset or liability developed based on the best information available in the circumstances.

The Chancery's financial assets and liabilities measured at fair value on a recurring basis are categorized according to the fair value hierarchy which prioritizes the valuation of inputs into three broad levels as described below:

> Level 1 – quoted prices in active markets for identical investments as of the measurement date
>
> Level 2 – quoted prices which are not active, quoted prices for similar assets or liabilities in active markets or inputs other than quoted prices that are observable (either directly or indirectly) for substantially the full term of the asset or liability
>
> Level 3 – significant unobservable prices or inputs where there is little or no market activity for the asset or liability at the measurement date

The categorization within the fair value hierarchy is based upon the lowest level of input that is significant to the fair value measurement.

A significant portion of the Chancery's investments are subject to the risk of value fluctuations that is inherent in the market. As such, the value of the Chancery's assets may change frequently. To help manage this risk, the Chancery utilizes professional investment managers who oversee the Chancery's portfolio.

**Accounts Receivable -** Accounts receivables consist of trade and non-trade receivables and assessments receivable from parishes and other institutions and are stated at the amount the Chancery expects to collect from outstanding balances. Credit is extended based upon the evaluation of the parish or institution's financial condition and other factors and, generally, collateral is not required.

The Chancery provides for probable uncollectible amounts through a provision for bad debt expense and an adjustment to a valuation allowance based on its assessment of the current status of individual accounts. Balances that are still outstanding after management has used reasonable collection efforts are written off through a charge to the valuation allowance and a credit to accounts receivable.

**Loans and Notes Receivable -** Loans and notes receivable have variable maturity dates and are generally due in accordance with scheduled payments. The amounts are stated at the amount the Chancery expects to collect from outstanding balances. The Chancery expects to collect the full amounts of loans and notes receivable and as such, no allowance for doubtful accounts has been recorded. All loans and notes receivable are current at June 30, 2016 and 2015.

All loans accrue interest monthly in accordance with the applicable interest rates. Interest income is recognized monthly on the accrual basis.

**Property and Equipment -** Property and equipment are held in the name of the Corporation Sole and are stated at cost if purchased or at their estimated fair value at the date of donation. For properties placed in service and for which the Chancery has oversight, depreciation is provided using the straight-line method over the estimated useful lives of the assets as follows:

- Buildings and Improvements - 5 to 50 years.
- Furniture and Equipment - 3 to 10 years.
- Vehicles - 4 to 5 years.

The Chancery capitalizes all purchases of fixed assets that cost $2,500 or more and that have an estimated economic life longer than one year.

**Deposits Payable to Parishes and Institutions -** The Chancery holds deposits for parishes, schools and institutions. The deposits are invested with the Deposit and Loan Fund in return for income on the investment. Deposit interest rates were 1.5% on short-term deposits, and 2.5% on long-term deposits in both 2016 and 2015. Such deposits are returnable on request.

**Assets Held for Parishes and Institutions -** The Chancery holds assets for various parishes, schools and institutions related to proceeds from special collections administered by the United States Conference of Catholic Bishops, other special collections local to the Diocese and administered by the Chancery, and other deposits administered by the Chancery.

**Gifts, Bequests and Grants -** The Chancery reports gifts, bequests and grants as unrestricted revenue unless they are received with donor stipulations that limit the use of donated assets, in which case they are recorded as temporarily or permanently restricted revenue. Contributions are generally recognized when received.

**Income Taxes -** In an annually updated ruling, the Internal Revenue Service has held that the agencies, instrumentalities and educational, charitable, and religious institutions operated, supervised, or controlled by or in connection with the Roman Catholic Church in the United States, its territories or possessions appearing in the "Official Catholic Directory" are exempt from federal income tax under the provisions of Section 501(c)(3) of the Internal Revenue Code. The Roman Catholic Bishop of Great Falls, Montana is listed in the "Official Catholic Directory" and therefore is exempt from income tax and income tax filings. Accordingly, the accompanying financial statements reflect no provision for income taxes.

**Functional Allocation of Expenses -** The costs of providing the various programs and other activities of the Chancery have been summarized on a functional basis in Note 17. Certain costs have been allocated among the programs and supporting services benefited.

**Reclassifications -** Certain reclassifications have been made to the 2015 financial statements to conform to the 2016 financial statement report format.

## NOTE 3:   INVESTMENTS:

The Chancery administers investments through independent custodial arrangements for its benefit and the benefit of various Diocesan institutions.

Investments are managed under an investment policy operated under a moderate risk strategy and a balanced approach that is expected to preserve or grow the purchasing power of assets while also reducing the risk of substantial changes in market value from year to year.  Investments were held by the following at June 30, 2016 and 2015:

|  | 6/30/16 | 6/30/15 |
|---|---|---|
| Deposit and Loan Fund | $ 14,886,297 | $ 14,857,605 |
| Chancery | 490,397 | 508,307 |
| Mount Olivet Cemetery | 3,020,541 | 2,956,056 |
| Total Investments | $ 18,397,235 | $ 18,321,968 |

The Chancery's investment income for the years ended June 30, 2016 and 2015 is as follows:

|  | 6/30/16 | 6/30/15 |
|---|---|---|
| Interest and Dividends | $      320,447 | $      486,853 |
| Net Realized and Unrealized Gains (Losses) on Investments | 271,631 | 442,352 |
| Investment Income, Net | 592,078 | 929,205 |
| Deposit and Loan Fund Interest | 85,093 | 94,230 |
| Investment Income | $      677,171 | $   1,023,435 |

## NOTE 4:   FAIR VALUE MEASUREMENTS:

The following tables present the Chancery's investments measured at fair value on a recurring basis as of June 30, 2016 and 2015:

|  | 2016 | Quoted Prices in Active Markets of Identical Assets (Level 1) | Other Observable Inputs (Level 2) | Unobservable Inputs (Level 3) |
|---|---|---|---|---|
| Money Market Funds | $   1,044,226 | $   1,044,226 | $            - | $            - |
| Bank Deposit Funds | - | - | - | - |
| U.S Treasury and Federal Agency Securities | 1,159,811 | - | 1,159,811 | - |
| Corporate Bonds | 3,592,628 | - | 3,592,628 | - |
| Equity Securities | 10,239,148 | 10,239,148 | - | - |
| Mutual Funds | 1,781,516 | 1,781,516 | - | - |
| Insurance Policies | 322,124 | - | - | 322,124 |
| Other | 257,782 | - | - | 257,782 |
|  | $ 18,397,235 | $ 13,064,890 | $   4,752,439 | $      579,906 |

| | 2015 | Quoted Prices in Active Markets of Identical Assets (Level 1) | Other Observable Inputs (Level 2) | Unobservable Inputs (Level 3) |
|---|---|---|---|---|
| Money Market Funds | $ 915,651 | $ 915,651 | $ - | $ - |
| Bank Deposit Funds | - | - | - | - |
| U.S Treasury and Federal Agency Securities | 513,495 | - | 513,495 | - |
| Corporate Bonds | 3,661,144 | - | 3,661,144 | - |
| Equity Securities | 10,762,828 | 10,762,828 | - | - |
| Mutual Funds | 1,940,926 | 1,940,926 | - | - |
| Insurance Policies | 285,137 | - | - | 285,137 |
| Other | 242,787 | - | - | 242,787 |
| | $ 18,321,968 | $ 13,619,405 | $ 4,174,639 | $ 527,924 |

A significant portion of the Chancery's investments are classified within Level 1 because they are comprised of individual equities and mutual funds with readily determinable fair values based on daily redemption values. The Chancery also invests in fixed income securities that are valued using pricing models and are classified within Level 2. Level 3 assets include the cash surrender value of a life insurance policy and the equity balance of the Chancery's investment in Catholic Umbrella Pool II, which is a self-insurance fund for certain (Arch) Dioceses of which the Diocese of Great Falls-Billings is a member.

Below is a reconciliation of investments measured using significant unobservable inputs (Level 3) for the years ending June 30, 2016 and 2015:

| | 6/30/16 | 6/30/15 |
|---|---|---|
| Beginning of Year, Level 3 | $ 527,924 | $ 410,881 |
| Increase (Decrease) in Fair Value | 51,982 | 117,043 |
| End of Year, Level 3 | $ 579,906 | $ 527,924 |

## NOTE 5:  ACCOUNTS RECEIVABLE:

Accounts receivable consist of the following at June 30, 2016 and 2015:

| | 6/30/16 | 6/30/15 |
|---|---|---|
| Parishes and Institutions | $ 131,943 | $ 201,918 |
| | | |
| Assessments, Net: | | |
| Current Operating Fund Assessment | $ 429,138 | $ 435,639 |
| Care and Share Assessment | 1,330,836 | 1,175,908 |
| Less: Allowance for Doubtful Accounts | (181,122) | (181,757) |
| Total Assessments, Net | $ 1,578,852 | $ 1,429,790 |

|                                        | 6/30/16 |         | 6/30/15 |          |
|----------------------------------------|--------:|--------:|--------:|---------:|
| Other:                                 |         |         |         |          |
| Trade                                  | $       | 82,788  | $       | 69,332   |
| Accrued Interest                       |         | -       |         | 10,575   |
| Miscellaneous                          |         | 11,165  |         | 15,500   |
| Less: Allowance for Doubtful Accounts  |         | (2,252) |         | (25,228) |
| Total Other                            | $       | 91,701  | $       | 70,179   |

## NOTE 6: LOANS AND NOTES RECEIVABLE:

Loans and notes receivable consist of the following at June 30, 2016 and 2015:

|                                  | 6/30/16 |           | 6/30/15 |           |
|----------------------------------|--------:|----------:|--------:|----------:|
| Parishes and Institutions:       |         |           |         |           |
| Parishes Principal               | $       | 4,635,676 | $       | 4,887,457 |
| Parishes Accrued Interest        |         | 151,729   |         | 100,899   |
| Miscellaneous                    |         | 27,416    |         | 12,399    |
| Total Parishes and Institutions  | $       | 4,814,821 | $       | 5,000,755 |

The loans and notes receivable, which are unsecured, are due at various dates including interest charged at rates between 1.0%-4.0% for the years ended June 30, 2016 and 2015.

|                   | 6/30/16 |        | 6/30/15 |        |
|-------------------|--------:|-------:|--------:|-------:|
| Other:            |         |        |         |        |
| Principal         | $       | 82,211 | $       | 85,869 |
| Accrued Interest  |         | 13,347 |         | 12,129 |
|                   | $       | 95,558 | $       | 97,998 |

The other loans and notes receivable are advances to Diocesan priests and seminarians which are unsecured, and are due at various dates including interest charged at 4.0% for the years ended June 30, 2016 and 2015.

## NOTE 7: CATHOLIC FOUNDATION OF EASTERN MONTANA:

The Chancery has a beneficial interest in assets held by the Catholic Foundation of Eastern Montana (CFEM). The funds were received from donors who restricted the funds, or income from the funds for the benefit of the Chancery. Distributions from the funds are made in accordance with CFEM's spending policies. As of June 30, 2016 and 2015 the Chancery recorded its interest in CFEM as an asset totaling $1,862,866 and $1,898,437, respectively.

## NOTE 8:   PROPERTY AND EQUIPMENT:

Property and equipment consists of the following at June 30, 2016 and 2015:

|  | 6/30/16 | 6/30/15 |
|---|---|---|
| Land and Land Improvements | $  1,330,422 | $  1,287,841 |
| Building and Improvements | 9,529,758 | 8,701,830 |
| Furniture and Equipment | 712,348 | 667,975 |
| Vehicles | 478,031 | 591,310 |
| Construction in Progress | - | 155,179 |
|  | 12,050,559 | 11,404,135 |
| Less: Accumulated Depreciation | (4,493,364) | (4,445,614) |
|  | $  7,557,195 | $  6,958,521 |

Depreciation expense amounted to $343,802 and $387,005 for the years ended June 30, 2016 and 2015, respectively.

## NOTE 9:   SPLIT-INTEREST AGREEMENTS:

The Chancery is the beneficiary of a charitable remainder annuity trust.  The trust provides for distribution payments to designated beneficiaries over the trust's term.  At the end of the trust's term, the remaining assets are available for use by the Chancery.  There are no net assets recorded by the Chancery related to the trust as the present value of the distribution payments exceed the estimated fair value of the trust's assets at June 30, 2016 and 2015.

## NOTE 10:  NET ASSETS:

Temporarily and permanently restricted net assets as of June 30, 2016 and 2015 are summarized as follows:

|  | 6/30/16 | 6/30/15 |
|---|---|---|
| Temporarily Restricted: |  |  |
| Assessments | $  1,699,997 | $  1,685,456 |
| Catholic Foundation of Eastern Montana | 340,825 | 435,597 |
| Scholarships | 238,311 | 202,017 |
| Capital Campaign | - | 66,349 |
| Building | - | 613,893 |
|  | $  2,279,133 | $  3,003,312 |

|  | 6/30/16 | 6/30/15 |
|---|---|---|
| Permanently Restricted: |  |  |
| Seminary Burse | $  1,225,366 | $  1,225,366 |
| Catholic Foundation of Eastern Montana | 1,415,376 | 1,321,618 |
| Cemeteries Perpetual Care | 988,845 | 976,545 |
|  | $  3,629,587 | $  3,523,529 |

**NOTE 11: PENSION PLAN - PRIESTS:**

Diocesan priests are covered by a defined benefit pension plan (which operates as a multi-employer plan) which provides for retirement benefits at age 65. The plan also has provision for early retirement at age 60. A participant is 100% vested after ten years of service.

The plan is funded through the Clerical Benefit Association and Wells Fargo Institutional Trust Group serves as trustee. Contributions are made by employer parishes and organizations. The Chancery contributes on behalf of priests on leave, not in active ministry, and employed at the Chancery. In addition, the Chancery made voluntary contributions to the plan in 2016 and 2015 of $50,000 and $25,000, respectively.

At June 30, 2016 (the latest valuation date) and 2015, the present value of future plan benefits was approximately $6,579,000 and $6,350,000, respectively, using a discount rate of 3.55% and 4.14%, respectively. The market value of assets available for plan benefits at June 30, 2016 (the latest valuation date) and 2015 was approximately $3,147,000 and 3,123,000, respectively, using an assumed long-term rate of return of 5%.

**NOTE 12: PENSION PLAN – LAY EMPLOYEES:**

The Chancery provides a 403(b) defined contribution pension plan for lay employees through Christian Brothers Retirement Services. For permanent full-time and part-time employees, the Diocesan contribution is equal to 6% of gross salary. Employees may also contribute to the plan on a voluntary basis from their salary, subject to certain annual limits. For the years ended June 30, 2016 and 2015, employer costs were $114,544 and $106,743, respectively.

**NOTE 13: POSTEMPLOYMENT BENEFITS:**

The Chancery provides postretirement health insurance benefits for retired priests. The Chancery has determined the cost of its accumulated postretirement benefit obligation for the years ended June 30, 2016 and 2015 in accordance with accounting principles generally accepted in the United States of America.

The following table provides further information about the Chancery postretirement benefit plan at June 30, 2016 and 2015:

|  | 6/30/16 | 6/30/15 |
|---|---|---|
| Benefit Obligation | $ 14,455,996 | $ 12,776,832 |
| Employer Contributions | - | - |
| Participant Contributions | - | - |
| Benefit Payments | 256,542 | 276,348 |
| Fair Value of Plan Assets | - | - |
| Net Unfunded Status of the Plan | 14,455,996 | 12,776,832 |

Amounts recognized in the Statement of Financial Position consist of:

|  | 6/30/16 | 6/30/15 |
|---|---|---|
| Accrued Benefit Cost | $ 14,455,996 | $ 12,776,832 |

17

The net periodic benefit costs recognized in the change in net assets for 2016 and 2015 were $1,679,164 and $2,067,118, respectively.

The assumptions used to determine benefit obligations at June 30, 2016 and 2015 were as follows:

|  | 6/30/16 | 6/30/15 |
|---|---|---|
| Discount Rate | 4.0% | 4.00% |
| Health Care Cost Trend Rate: | | |
|   First Year | 9.0% | 9.0% |
|   Ultimate | 5.0% | 5.0% |
| Years to Ultimate | 4 Years | 4 Years |

## NOTE 14: RELATED PARTIES:

As disclosed in Note 1, parishes and related institutions that are not fiscally responsible to the Bishop are not included in these financial statements. These financial statements do not include various payables and receivables between the Chancery and related parishes and institutions.

The Bishop is a board member of Catholic Social Services of Montana and Montana Catholic Conference. The Chancery made contributions to Catholic Social Services of Montana of $72,000 for the fiscal years ended June 30, 2016 and 2015, and contributions to Montana Catholic Conference of $75,000 and $96,680 for fiscal years ended June 30, 2016 and 2015, respectively.

## NOTE 15: COMMITMENTS AND CONTINGENCIES:

The Chancery is a defendant in several pending or threatened lawsuits. Two of the lawsuits involving 72 claims have been consolidated and a mediation of these claims is scheduled for March, 2017. The Chancery's insurer has taken the position that its liability coverage did not commence until March 1, 1974, and, as such, any claims arising prior to this date will not be covered, nor will the insurer pay for the cost of the defense of these claims. As a result, out of the 72 claims, only 17 are claims covered by the Chancery's liability insurance policies, which could expose the assets of the Chancery to any adverse judgment associated with these claims. In order to reduce the exposure of the assets of the Chancery, in cooperation with its insurer, efforts are being undertaken to resolve all 72 claims via a global mediation.

## NOTE 16: ENDOWMENT:

The Chancery's endowment consists of cemetery perpetual care funds established for the on-going upkeep of diocesan cemeteries, the seminary burse fund established for the development and education of priests, and permanently restricted funds held by the Catholic Foundation of Eastern Montana. The endowment assets include donor-restricted endowment funds. As required by generally accepted accounting principles in the United States, net assets associated with endowment funds are classified and reported based on the existence or absence of donor-imposed restrictions.

### Interpretation of Relevant Law:

The Chancery has interpreted the Montana Uniform Prudent Management of Institutional Funds Act (UPMIFA) as requiring the presentation of the fair value of the original gift as of the gift date of the donor-restricted endowment funds absent explicit donor stipulations to the contrary. As a result, the Chancery classifies as permanently restricted net assets (a) the original value of gifts

donated to the permanent endowment, and (b) the original value of subsequent gifts to the permanent endowment. The remaining portion of the donor-restricted endowment fund that is not classified in permanently restricted net assets is classified as temporarily restricted net assets until those amounts are appropriated for expenditure by the Chancery in a manner consistent with the standard of prudence prescribed by UPMIFA.

In accordance with UPMIFA, the Chancery considers the following factors when making a determination to appropriate or accumulate donor-restricted endowment funds:

(1) The duration and preservation of the fund

(2) The purpose of the Chancery and the donor-restricted endowment fund

(3) General economic conditions

(4) The possible effect of inflation and deflation

(5) The expected total return from income and the appreciation of investments

(6) Other resources of the Chancery

(7) The investment policies of the Chancery

## Endowment Spending Policy

It is the goal of the Chancery to provide annual distributions to support the programs it has identified within its mission. The Chancery has taken into consideration the impact cash withdrawals play upon the volatility of a portfolio over time.

## Endowment Investment Policy

**Investment Objective -** The obligations of the Chancery are long-term in nature; consequently, the investment of the endowment assets has a long-term focus. The endowment assets are invested in accordance with sound investment practices that emphasize long-term investment fundamentals. The primary investment objectives are, first, preservations of purchasing power of the principal. The second objective is the generation of a reasonable income to support the specific programs as identified by the donors. These objectives are achieved through a well-diversified portfolio structure in a manner consistent with the investment policy when read in its entirety.

**Risk Tolerance -** The Chancery examined two important factors that affect the portfolio risk tolerance: financial ability to accept risk within the investment program and the willingness to accept return volatility. The Chancery is comfortable with a low to moderate risk strategy. However, safety and soundness is considered essential in the selection of securities. Specifically, approved investments may be in blue chip stocks, corporate bonds, time certificates of deposit, commercial paper US Treasury securities, government agency offerings and money market funds, bank security agreements and savings accounts.

**Strategies for Achieving Objectives -** To satisfy its long-term objectives, the Chancery relies on a total return strategy in which investment returns are achieved through both capital appreciation (realized and unrealized) and current yield (interest and dividends).

The Chancery's endowment funds are as follows:

| | Unrestricted | Temporarily Restricted | Permanently Restricted | Total |
|---|---|---|---|---|
| Balance, June 30, 2014 | $ 99,594 | $ 230,396 | $ 3,461,852 | $ 3,791,842 |
| Contributions | - | - | 12,525 | 12,525 |
| Change in Beneficial Interest in CFEM | 7,501 | 38,973 | 49,152 | 95,626 |
| Balance, June 30, 2015 | 107,095 | 269,369 | 3,523,529 | 3,899,993 |
| Contributions | - | - | 12,400 | 12,400 |
| Change in Beneficial Interest in CFEM | (42,265) | (51,117) | 93,658 | 276 |
| Balance, June 30, 2016 | $ 64,830 | $ 218,252 | $ 3,629,587 | $ 3,912,669 |

## NOTE 17: FUNCTIONAL EXPENSES:

The Chancery's expenses by function for the years ended June 30, 2016 and 2015 were as follows:

| | 6/30/16 | 6/30/15 |
|---|---|---|
| Programs: | | |
| Bishop | $ 315,686 | $ 338,524 |
| Chancery | 317,973 | 425,010 |
| Moderator of the Curia | 164,614 | 211,451 |
| Ministries | 112,950 | 100,203 |
| Stewardship | 208,486 | 1,104,184 |
| Evangelization | - | 108 |
| Tribunal | 73,743 | 61,781 |
| Schools | 1,576,697 | 1,379,448 |
| Priests | 2,271,696 | 3,171,333 |
| Worship | 4,606 | 17,480 |
| Cemeteries | 358,321 | 561,697 |
| Chancellor | 128,472 | 86,929 |
| Parishes | 852,041 | 1,948,542 |
| Special Collection | - | 40 |
| Youth and Young Adult Ministry | 143,030 | 42,041 |
| | 6,528,315 | 9,448,771 |
| Supporting Services: | | |
| Business Office | 283,694 | 507,586 |
| Human Resources | 117,537 | 284,303 |
| Properties | 564,415 | 497,798 |
| | 965,646 | 1,289,687 |
| Total | $ 7,493,961 | $ 10,738,458 |

**NOTE 18: SUBSEQUENT EVENTS:**

The Chancery has evaluated subsequent events through April 10, 2017, the date which the financial statements were available to be issued. The Chancery filed a voluntary petition for Chapter 11 bankruptcy on March 31, 2017. The financial statements do not include any adjustments that might be necessary in relation to the bankruptcy filing.

**NOTE 19: RESTATEMENT:**

The Chancery's beginning net assets at July 1, 2014 were restated to reflect net asset classification corrections of $(2,277,471) at the Catholic Foundation of Eastern Montana. In addition, the Change in Beneficial Interest in Catholic Foundation of Eastern Montana on the Statement of Activities for the year ended June 30, 2015 was decreased by $(177,344), and the Catholic Foundation of Eastern Montana – Restricted investment on the Statement of Financial Position as of June 30, 2015 was decreased by $(2,454,815).

## EXHIBIT D



**TEMPORAL MATTERS POLICIES**
Diocese of Great Falls-Billings

**DIOCESAN DEPOSIT AND LOAN FUND POLICIES**

## DIOCESAN DEPOSIT AND LOAN FUND POLICIES

### Purpose

The Diocese has established a Deposit and Loan Fund (D&L Fund) to provide parishes, schools, and other diocesan entities with a means to save excess revenues and borrow funds for operating capital or capital improvements.

Funds deposited in the D&L Fund remain the funds of the depositing parish, school, or other diocesan entity. The D&L Loan Fund holds funds in trust and administers them according to this policy. At all times, the deposit principal is guaranteed.

Interest is paid to parishes, schools, and other diocesan entities at a rate which begins each year on July 1, established by the board of directors of the Diocese of Great Falls-Billings Juridic Persons Capital Assets Support Corporation (CASC).

The funds on deposit in the D&L Fund may be loaned to diocesan parishes, schools, or other diocesan entities who, in accord with this policy, seek a diocesan loan for particular approved projects/needs. In this manner the Diocese assists parishes, schools, and other diocesan entities when short term operating capital needs arise, new construction, expansion, or renovation is required or when significant maintenance or repair is required. Such financial support is necessary in order to support the parishes, schools, and other diocesan entities in their various needs and to preserve and prolong the usefulness and maintenance of the buildings and grounds of diocesan institutions.

Parishes, schools, and other diocesan entities may borrow only from the D&L Fund and may not borrow from outside financial institutions. Projects of a size that may prompt the use of outside borrowing will be coordinated and administered entirely by the D&L Fund.

### Definitions

The definitions below are provided for reference purposes only and are not formally a part of this policy.

<u>Unrestricted Donation</u>    An unrestricted donation is any gift that is given for the general use of or for the "greatest needs" of an organization. Unrestricted donations can be spent for any expense associated with operating an organization in the furtherance of its mission.

<u>Designated Fund</u>    A designated fund consists of unrestricted donations that have



**TEMPORAL MATTERS POLICIES**
Diocese of Great Falls-Billings

**DIOCESAN DEPOSIT AND LOAN FUND POLICIES**

been internally allocated to a specific purpose.  An example of a designated fund would be when an organization designates some excess revenue to the future replacement of the parking lot.  Another example of a designated fund would be a quasi-endowment (see below).

Restricted Donation     A restricted donation is any gift that includes a limitation, placed upon the gift by a donor, as to how the gift may be used.  Donors making a restricted donation generally specify the limitations placed on the gift in a gifting instrument.  Restricted donations are always one of two types: temporarily restricted or permanently restricted.  It is important to note that only a third party donor can create any form of legal restriction on a gift or a fund.

Temporarily Restricted Donation     A temporarily restricted donation is a gift that is donated subject to a purpose restriction or a time restriction.  An example of a purpose restriction would be a gift to be used to repair or replace the roof of the church.  An example of a time restriction would be a gift that could only be used in the next budget year.

Permanently Restricted Donation     A permanently restricted donation is a gift that contains a limitation on use that is attached to it for perpetuity.  A typical example would be an endowment, the original amount of which can never be spent but the earnings from which can be used for general or specific purposes.  Another example would be the perpetual care fund of a cemetery that is restricted by either a donor or by law.

Endowment     An endowment is one type of permanently restricted donation (see above).  The original amount of the endowment is often referred to as the "corpus" and can never be spent.  Earnings generated by an endowment can be either unrestricted or temporarily restricted as specified by the donor.  It is important to note that no organization can permanently restrict funds into its own endowment. Only a third party/donor can so permanently restrict funds.

Quasi-Endowment     A quasi-endowment consists of unrestricted funds of an organization which management choses to treat as an endowment for internal purposes.  It is important to note that quasi-endowments carry no legal restrictions whatsoever and are neither temporarily restricted nor permanently restricted.  A quasi-endowment reflects a designation of unrestricted funds only and such designation can be changed at any point in the future by management of an organization.

2



# TEMPORAL MATTERS POLICIES
### Diocese of Great Falls-Billings

## DIOCESAN DEPOSIT AND LOAN FUND POLICIES

**Reserves Allowed at Local Level**

Parishes, schools, and other diocesan entities are authorized to retain a short term operational reserve in local accounts of an amount equal to twenty five percent (25%) of their respective estimated annual operational expenses.

In addition to the locally held short term operational reserves, parishes, schools, and other diocesan entities are also authorized to hold in local accounts restricted and designated unrestricted funds for special events or projects that are expected to be expended within eighteen (18) months.  If such events or projects are expected to occur more than eighteen (18) months in the future, the parish, school, or other diocesan entity must deposit related restricted and/or designated unrestricted funds in a D&L Fund account or accounts.

Custodial funds being held by the parish, school, or other diocesan entity should be regularly remitted to the appropriate intermediary or entity for which they have been collected and should not be included in the calculation of locally held, short term operational reserves.

Since short term operational reserves and other permitted locally held funds are intended to meet short term cash flow needs, they cannot be invested in certificates of deposit, stocks, bonds, mutual funds, or other such instruments.

***Funds in excess of short term operational reserves and other permitted locally held funds must be deposited into a D&L account.***



# TEMPORAL MATTERS POLICIES
### Diocese of Great Falls-Billings

## DIOCESAN DEPOSIT AND LOAN FUND POLICIES

### Deposit Accounts

The Diocesan Deposit and Loan Fund offers three types of savings accounts. Interest on savings accounts is calculated as simple interest and is paid annually in mid-July.  Interest earned on savings accounts may either be reinvested or forwarded to the parish, school, or other diocesan entity upon request.

<u>Short Term Savings Account</u>    The short term savings account offers the greatest liquidity, but provides for a lower rate of return.  Funds withdrawal requests that are not related to an unapproved capital project are generally processed and mailed within two to four (2 - 4) business days after receipt by the Diocesan Business Office.  Requests for withdrawal from this account type must be submitted in writing and signed/submitted by the Pastor/Pastoral Administrator/Parish Life Coordinator (or his/her designee).

Short term savings accounts should be used for:
1.  Operating reserves in excess of amounts in locally held funds in an amount up to one hundred percent (100%) of estimated annual operational expenses (i.e. twelve (12) months of operating cash) ; and/or
2.  Restricted and/or Designated unrestricted funds expected to be more than eighteen (18) months in the future; and/or
3.  A temporary account to hold a non-recurring and/or stock gift.

<u>Long Term Savings Account</u>    The long term savings account offers less liquidity but provides for a higher rate of return.  Funds withdrawal requests that are not related to an unapproved capital project are generally processed and mailed within ten to twenty (10 - 20) business days after receipt by the Diocesan Business Office. Requests for withdrawal from this account type must be submitted in writing and signed by the Pastor/Pastoral Administrator/Parish Life Coordinator (or his/her designee), the chair of the parish pastoral council, and the chair of the parish finance council.

Long term savings accounts should be used for:
1.  Longer term operating reserves (those in excess of twelve (12) months of operating cash); and/or
2.  Building reserve funds; and/or
3.  Estate, trust, or similar proceeds that are not needed for current operations or projects.

<u>Quasi-Endowment Savings Account</u>    The quasi-endowment savings account offers the highest rate of return, but is intended to be treated as an endowment. Funds withdrawal requests that are not related to an unapproved capital project are generally processed and mailed within sixty to ninety (60 - 90) days after receipt by the Diocesan Business Office.  Requests for withdrawal from this account type must



# TEMPORAL MATTERS POLICIES
### Diocese of Great Falls-Billings

## DIOCESAN DEPOSIT AND LOAN FUND POLICIES

be submitted in writing and signed by the Pastor/Pastoral Administrator/Parish Life Coordinator (or his/her designee), the chair of the parish pastoral council, and the chair of the parish finance council.

Quasi-endowment savings accounts should be used for reserves in excess of thirty six (36) months of operating cash that a parish, school, or other diocesan entity believes it will not need for the foreseeable future.  The account consists of unrestricted funds of an organization which management choses to treat as an endowment for internal purposes, but that can be accessed in times of significant financial distress.

<u>Transfers</u>    Transfers from short term savings accounts to long term savings accounts must be requested and documented in the same manner as a withdrawal from a short term savings account.  Transfers from long term savings accounts to short term savings accounts must be requested and documented in the same manner as a withdrawal from a long term savings account.

## Endowments and Quasi-endowments

Parishes, schools, and other diocesan entities are authorized to deposit endowed and other permanently restricted funds at the Catholic Foundation of Eastern Montana (CFEM).  Parishes, schools, or other diocesan entities are not authorized to "add to" an existing endowment or other permanently restricted fund or create any new endowments or permanently restricted funds with any funds except those so specifically designated by a third party donor.  Parishes, schools, and other diocesan entities are not authorized to maintain any accounts other than those that are permanently restricted at the CFEM.

In addition, if a parish, school, or other diocesan entity has a minimum of thirty six (36) months of unrestricted operating cash reserves on deposit in the D&L in any combination of short term and/or long term savings accounts, it is also authorized to create and/or supplement a quasi-endowment savings account.  Parishes, schools, and other diocesan entities interested in establishing or supplementing a quasi-endowment savings account should contact the Diocesan Finance Officer for further information.



# TEMPORAL MATTERS POLICIES
Diocese of Great Falls-Billings

## DIOCESAN DEPOSIT AND LOAN FUND POLICIES

**Receipt of Non-recurring Gifts, including Stock Gifts**

Should a parish, school, or other diocesan entity be the recipient of a non-recurring gift such as a planned gift of $10,000 or more (such as proceeds from an estate, a bequest, life insurance proceeds, IRA's, etc.) or any gift of securities (stocks, bonds, mutual funds, etc.), the funds must be temporarily placed in a short term savings account in the D&L Fund.

After consultation with the governing bodies of the parish, school, or other diocesan entity, strong consideration is to be given to distributing the gift on a percentage basis among the following possibilities:



_____%   to the entity for current use
_____%   to the entity's short term or long term D&L Fund account(s)
_____%   to establish or supplement the entity's quasi-endowment savings
           account
_____%   to establish or supplement the entity's endowment held at the
           CFEM (if permanently restricted by the donor)

Any gift that a parish, school, or other diocesan entity elects to receive in which the donor specifies or restricts the use of the gift, must be used or endowed according to the donor's intention.

<u>Stock gifts</u>     If a parish, school, or other diocesan entity receives stocks, bonds, or other financial securities from a donor, the securities must be transferred to the CFEM brokerage account for processing and liquidation.  After being liquidated, the parish, school, or other diocesan entity will receive a deposit into a short term savings account in the D&L (as noted above) in the amount of the fair market value of the security as of the date of the transfer, less commission cost of the transfer and subsequent sale of the securities.

<u>Exception</u>     When non-recurring gifts as described above are specifically restricted by the donor to be used for an active, properly approved capital project or are permanently restricted to a parish/diocesan endowment, the parish, school, or other diocesan entity may bypass the requirement of the gift being deposited into a short term savings D&L account and deposit the funds directly into an account that will fulfill the restriction of the gift.



# TEMPORAL MATTERS POLICIES
Diocese of Great Falls-Billings

## DIOCESAN DEPOSIT AND LOAN FUND POLICIES

### Loans

Deposits provide the source of funds for loans to other parishes, schools, and other diocesan entities in need of capital.  All borrowing by parishes, schools, and other diocesan entities must be done through the Diocesan Deposit and Loan Fund with the approval of the CASC, the Diocesan Finance Council, and the Diocesan Bishop.  ***No parish, school, or other diocesan entity is authorized to borrow funds from a commercial or private lending source.***  Funds for loans to parishes, schools, and other diocesan entities come from the Diocesan Deposit and Loan Fund, which is funded by excess revenues from parishes, schools, and other diocesan entities.  These loans are intended to assist the various parishes, schools, and other diocesan entities in major projects when some financing is needed or operating capital is required.  If borrowed funds are intended to finance a construction, renovation or repair project, the parish, school, or other diocesan entity is required to have fifty percent (50%) of the project cost in hand and demonstrate the ability to repay the loan.   If the borrowing entity is not debt free at the time of the request for project approval, all outstanding loans must be renegotiated at current interest rates and the entity must demonstrate the ability to service the total debt load.

The application for a loan is in the form of a letter to the Bishop (with copy to the Diocesan Finance Officer and the Diocesan Property Manager), summarizing the project/need, the cost, and the funds available toward the total cost of the project/need; and must be accompanied by a completed Parish Capital Expenditures & Loan Checklist form which can be found on the diocesan website (http://www.diocesegfb.org/Property Management/Parish Capital Expenditures and Loans Checklist.pdf).  The letter and/or checklist must be signed by the Pastor/Pastoral Administrator/Parish Life Coordinator and the chairpersons of the Parish Finance Council and the Parish Pastoral Council.  A copy of the Parish Finance Council Minutes approving the project and request to borrow funds must accompany the loan request.

A loan application package will first be considered by the CASC.  If the CASC recommends approval of a loan, it will then be forwarded to the Diocesan Finance Council to recommend approval of the project and loan, then to the Diocesan Worship Commission (if a new or renovated liturgical space is being contemplated), with final approval of the project/need and related loan resting with the Diocesan Bishop.

All loans are provided at an interest rate established by the CASC annually.  Loans are simple interest loans with no penalty for early payoff.



# TEMPORAL MATTERS POLICIES
Diocese of Great Falls-Billings

## DIOCESAN DEPOSIT AND LOAN FUND POLICIES

<u>Amortization</u>    A loan from the Deposit and Loan Fund will be amortized over a period of fifteen (15) years by default.  D&L loans can be amortized for a shorter period of time or extended to twenty (20) years at the discretion of the board of the CASC.

Parishes, schools, and other diocesan entities are encouraged to pay off loans as quickly as possible.  Any amount received in excess of the normal monthly payment in a given month is applied to principal.

If payments are not made in a timely manner on amortized loans, such that at least the interest due is not brought current by each December 31 and June 30, the loan will revert to a non-amortized loan and accumulated interest will be added to the principal each December 31 and June 30.  With this process, the D&L Fund is not carrying large interest due balances for long periods of time without earning interest on the accrued interest.  Such additional debt/principal will be subject to Diocesan Policy regarding debt amortization.  Amortized debt payments are to be included in the yearly budget for expenses by parishes, schools, or other diocesan entities.

<u>Outside Borrowing</u>    No parish, school, or other diocesan entity is allowed to borrow money from an outside source.  All borrowing must be from the Deposit and Loan Fund according to the terms of this Policy.

<u>Accounts Receivable & Short Term Loans</u>    Those parishes, schools, or other diocesan entities which have not paid at least the interest due on its' loan(s) and a minimum of ten percent (10%) of their diocesan billing for three consecutive months will be visited by a member of the Diocesan Staff to perform a review of the parish books.  Under the direction of an appointed Diocesan Staff person, a capital campaign or other fund raising campaign may be required.

After the second ninety (90) days without substantial payment (minimum 50%), any balance ninety (90) days or older may be charged interest at one half percent (0.5%) per month.

The Diocesan Bishop may appoint a financial administrator for the parish, school, or other diocesan entity if there has been no substantial response/progress by the end of the budget year.

The total balance of all outstanding diocesan bills (not including unpaid interest from the Deposit and Loan Fund) submitted to any parish, school, or other diocesan entity prior to May 1st that remain unpaid on the immediately following June 30th will be funded by the creation of a short term D&L Fund loan to be amortized over the subsequent five (5) year period.  The loan will be funded as of that same June 30th and the proceeds of the loan will be used to bring the entity's diocesan account



# TEMPORAL MATTERS POLICIES
Diocese of Great Falls-Billings

## DIOCESAN DEPOSIT AND LOAN FUND POLICIES

current, with interest being charged at the normal D&L Fund rate beginning the next day, July 1st.  Such new debt will be subject to the Diocesan Policy regarding debt amortization.

For the purpose of this Policy, diocesan bills include (but are not limited to) all routine bills for items such as employee benefits, insurance, payroll taxes, etc. as well as diocesan assessments such as past due/prior year Cathedraticum/COF and Care & Share assessments.

**Transitional Relief**    *With regard to the above Accounts Receivable/Short Term Loans Policy, the effective date will retroactively be June 30, 2016. However, any such short terms loans that are created as a result will hereby NOT be interest bearing for a period of three years (through June 30, 2019). Any balances remaining as of June 30, 2019 of such short term loans created on June 30, 2016, will begin accruing interest as of July 1, 2019 at the then current D&L Fund borrowing rate.*


## Approval

*At its meeting on August 4, 2016, the Diocesan Finance Council reviewed the foregoing Policy and recommended that it become the Policy of the Diocese of Great Falls-Billings.*

*At its meeting on August 17, 2016, the College of Consultors recommended that this become the Policy of the Diocese of Great Falls-Billings.*

*This Policy for the Diocese of Great Falls-Billings is hereby approved and becomes effective September 1, 2016 for all entities of the Diocese of Great Falls-Billings.*


<u>August 22, 2016</u>
Date

Most Reverend Michael Warfel
Bishop of Great Falls-Billings


Darren Eultgen, Chancellor

9